STATE OF NORTH CAROLINA v. JOSEPH EDWARD KENNEDY

No. 658A86

(Filed 7 July 1987)

**1. Rape and Allied Offenses § 3— sexual offenses—short-form indictment**

Indictments charging first degree sexual offenses in accordance with N.C.G.S. § 15-144.2 without specifying which sexual acts were committed were sufficient to charge crimes of first degree sexual offense and to put defendant on notice of the accusations.

**2. Criminal Law § 124— short-form indictments for sexual offenses—no denial of unanimous verdict**

Defendant was not deprived of his right to a unanimous verdict because each of the three short-form indictments charged in identical language a first degree sexual offense by defendant against the same victim on the same date where the trial judge submitted a specific instruction with respect to unanimity of verdict as to each indictment and also assigned correlating specific alleged acts of sexual offense to each indictment.

**3. Jury § 7.9— inability to render guilty verdict—challenge for cause—applicability of statute to all cases**

The statute allowing a challenge for cause against a prospective juror who "[a]s a matter of conscience, regardless of the facts and circumstances, would be unable to render a verdict with respect to the charge in accordance with the law of North Carolina," N.C.G.S. § 15A-1212(8), was intended to apply not only to the death qualification of prospective jurors in capital cases but also generally to qualifying jurors in all cases.

**4. Jury § 6.3— questioning prospective jurors—whether punishment would permit guilty verdict**

In a prosecution in which defendant faced mandatory life imprisonment on each of five first degree sexual offense charges, it was proper for the prosecutor to ask prospective jurors whether the punishment would prevent them from returning a verdict of guilty. Failure of the prosecutor to include in his questions the "matter of conscience" or "regardless of the facts and circumstances" language of N.C.G.S. § 15A-1212(8) did not make them improper.

State v. Kennedy

**5. Jury § 7.8— excusal of juror for cause—inability to perform duties**

The trial court did not err in excusing a juror for cause on the ground that he was "unable to perform his duties as a juror and render a fair and impartial verdict in these cases," N.C.G.S. § 15A-1212(9), where the record shows that the juror's *voir dire* answers were confused, confusing, unresponsive and ambiguous.

**6. Jury § 3— challenged juror in jury room—jury not impaneled—mistrial not required**

The trial court did not err in refusing to declare a mistrial because a potential juror who was ultimately disqualified from service was allowed to remain in the jury room with passed jurors prior to impanelment while arguments were heard on the State's challenge of the juror for cause where the trial court conducted a thorough examination of the selected jurors and determined that there had been no discussion of the case while they were in the jury room, and each juror affirmed that he or she would be able to fairly and impartially serve on the jury.

**7. Criminal Law §§ 50.1, 89.1— psychological test—opinion that victim responded in "honest fashion"**

A psychologist's testimony that a sexual offense victim responded to psychological test questions in an "honest fashion" was not an improper expert opinion as to the victim's character or credibility but went to the reliability of the test itself. N.C.G.S. § 8C-1, Rule 702.

**8. Rape and Allied Offenses § 4— victim's fear of defendant—relevancy**

A psychologist's opinion testimony that the victim was greatly afraid of her father and her testimony as to behavior of and statements by the victim which form the basis of this opinion was properly admitted in a prosecution of defendant for sexual offenses allegedly committed against his daughter.

**9. Criminal Law § 50.1; Rape and Allied Offenses § 4— expert testimony—symptoms of sexually abused children—victim's symptoms**

In a prosecution of defendant for sexual offenses allegedly committed against his daughter, it was proper for the trial court to allow a psychologist and a pediatrician to testify concerning the symptoms and characteristics of sexually abused children and to state their opinions that the symptoms exhibited by the victim were consistent with sexual or physical abuse. N.C.G.S. § 8C-1, Rules 702, 703 and 704.

**10. Criminal Law § 50.1; Rape § 4— expert testimony—scratch marks not self-inflicted**

In a prosecution of defendant for sexual offenses allegedly committed against his daughter, the trial court properly allowed the Chief Medical Examiner for North Carolina to state his opinion that scratch marks on the victim's back were not consistent with self-mutilation and properly allowed a pediatrician to state her opinion that the injuries were neither accidental nor self-inflicted.

**11. Criminal Law § 42.2— victim's damaged picture and dolls—absence of foundation for admission**

In a prosecution of defendant for sexual offenses allegedly committed against his daughter, a torn school picture of the victim and three of the victim's dolls found with the hair cut off two of the dolls and the third doll decapitated were not admissible to show that the victim was preoccupied with child abuse and that cuts and burns on the victim were self-inflicted where there was no showing as to when and by whom the exhibits were damaged.

**12. Criminal Law § 99.2— references to "the victim"—absence of prejudice**

The trial court's reference to "the victim" on one occasion while listing for the prospective jurors the five offenses with which defendant was charged was a mere lapsus linguae and not a prejudicial expression of opinion. Furthermore, any error in the prosecutor's reference to "the victim" was cured when the trial court instructed the jury to disregard such terminology. N.C.G.S. § 15A-1222.

**13. Criminal Law § 89.2— corroborative testimony—"new" information**

Testimony was corroborative although it contained "new" or additional information when it tended to strengthen and add credibility to the testimony which it corroborated.

**14. Rape and Allied Offenses § 6.1— first degree sexual offenses—submission of lesser offense not required**

The trial court in a prosecution for first degree sexual offenses was not required to submit to the jury the lesser included offense of assault on a female where the evidence was clear and positive with respect to each element of the sexual offenses with which defendant was charged, and there was no evidence pointing to the commission of a lesser included offense.

**15. Criminal Law § 117.1— instructions on witness credibility**

The trial court's instructions on the credibility of lay and expert witnesses, including instructions that the jury "should consider the opinion of an expert witness, but you are not bound by it" and that the court had no opinion as to whether any part of the evidence should be believed or disbelieved, were sufficient, and the court did not err in failing to give defendant's requested instruction that the jury was permitted to completely disregard or reject the testimony of expert witnesses.

APPEAL by defendant from judgments sentencing defendant to two consecutive terms of life imprisonment for convictions on four charges of sexual offense in the first degree, imposed by *John, J.*, at the 2 June 1986 session of Superior Court, GUILFORD County. Heard in the Supreme Court 11 May 1987.

*Lacy H. Thornburg, Attorney General, by Jane Rankin Thompson, Assistant Attorney General, for the state.*

*Cahoon & Swisher, by Robert S. Cahoon and Daniel E. Smith, for defendant.*

MARTIN, Justice.

After considering defendant's assignments of error, we conclude that defendant received a fair trial, free of prejudicial error.

In summary, the state's evidence showed that on several occasions in 1985 defendant committed various sexual offenses against his daughter. As a result, the victim spent ten months in a psychiatric hospital and was also treated by medical doctors, psychologists, and social workers.

Defendant testified and produced evidence that he did not assault his daughter and that he was of good character and reputation.

Additional evidence necessary to determine the issues will be hereafter set forth.

[1] Defendant first assigns as error the trial court's denial of his motion to dismiss the indictments against him. Defendant was charged in five separate bills of indictment with sexual offense in the first degree. The indictments were drafted pursuant to N.C.G.S. § 15-144.2, which authorizes a short-form indictment for the crime of sexual offense. Each indictment charges that "on or about the date of the offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did engage in a sex offense with [the victim], a female person, by force and against her will." Defendant subsequently filed a motion for a bill of particulars, requesting the "[e]xact time, place and date of each offense charged," and the "[e]xact description of each particular criminal act by defendant." The state's response provided information on the specific sexual act alleged for each offense along with the date, time of day, and place of each offense. The state also filed three supplemental bills of particulars providing more specific information on the nature of the sexual offenses alleged in three of the cases. Defendant now argues that the indictments fail to charge offenses in a manner adequately apprising him of the conduct which is the subject of

the accusation as required by N.C.G.S. § 15A-924(a)(5), *State v. Hunter*, 299 N.C. 29, 261 S.E. 2d 189 (1980); that the bills do not specify the sexual offenses alleged to have been committed by the defendant and are thus so general that he could later be charged for the same offense and not be able to raise the earlier prosecution as a bar; and that because each of the bills in three of the cases charges in identical language a first degree sexual offense by defendant against the same victim on the same date, 7 June 1985, it cannot be ascertained whether the jury was unanimous in finding that defendant committed the acts charged. Defendant further contends that a bill of particulars cannot cure a defective indictment. Defendant argues he was deprived of his right to a unanimous jury verdict as guaranteed by article I, section 24 of the North Carolina Constitution, his right to due process, his right to be free from double jeopardy, and his right to proper indictment by a grand jury.

[2]  We hold that the indictments were sufficient to charge the crime of first degree sexual offense and to put the defendant on notice of the charges. Nothing more is required. Defendant's contentions on this issue were answered in *State v. Effler*, 309 N.C. 742, 309 S.E. 2d 203 (1983); *State v. Edwards*, 305 N.C. 378, 289 S.E. 2d 360 (1982); and *State v. Lowe*, 295 N.C. 596, 247 S.E. 2d 878 (1978). In *Lowe*, the Court approved the abbreviated form of indictment. Then, in *Edwards*, the Court held that an indictment which charges first degree sexual offense in accordance with N.C.G.S. § 15-144.2 without specifying which sexual act was committed is sufficient to charge the crime of first degree sexual offense and to put the defendant on notice of the accusation. The Court in *Edwards* also pointed out that a defendant requiring additional information regarding the nature of the specific sexual act with which he stands charged may move for a bill of particulars to obtain information not contained in the indictment. Defendant availed himself of this procedure here. *Edwards* also settled defendant's double jeopardy claim. These holdings were reiterated in *Effler*, in which the short-form indictment in conjunction with the information provided in the bill of particulars was held to have met the requirements for an indictment as set forth in article I, section 23 of the North Carolina Constitution. In that case, Justice Meyer wrote:

[T]he purpose of Article I, § 23 of the North Carolina Constitution, which states that every person charged with a crime has the right to be informed of the accusation, is threefold: to enable the defendant to have a fair and reasonable opportunity to prepare his defense; to avail himself of his conviction or acquittal as a bar to subsequent prosecution for the same offense; and to enable the court to proceed to judgment according to the law in the case of a conviction.

309 N.C. at 747, 309 S.E. 2d at 206. The indictments in the present case were sufficiently particular to apprise defendant of the charges against him with sufficient certainty to satisfy these constitutional guarantees. As to defendant's claim that he was deprived of his right to a unanimous jury verdict, we note that the trial judge submitted a specific instruction with respect to unanimity of verdict as to each indictment and also assigned correlating specific alleged acts of sexual offense to each indictment. This argument has no merit.

In sum, we hold that the indictments charging defendant with the crimes of sexual offense in the first degree were proper in both form and substance. The sexual act alleged need not be specified, *State v. Hunter*, 299 N.C. 29, 41-42, 261 S.E. 2d 189, 197 (1980), and there can be more than one bill of indictment for several crimes which occurred on the same date. The indictments in the present case did not deprive defendant of any of his rights under either the Constitution of the United States or the North Carolina Constitution. This assignment of error is overruled.

[3]   Next, defendant alleges that the trial court committed several errors during the jury selection process. First, defendant contends that the prosecutor improperly questioned the jurors. Specifically, he argues that the prosecutor should not have been permitted to ask the prospective jurors whether, if they were satisfied beyond a reasonable doubt of the defendant's guilt, the mandatory life sentences which would be imposed would prevent them from returning a verdict of guilty. He says that unlike capital cases in which it is the function of the jury to recommend a sentence, voir dire inquiries regarding punishment are improper in a case in which the determination as to punishment is for the trial judge. Defendant further argues that even if such questions

are permissible, the form of the inquiries asked by the prosecutor in the present case was improper because it was not consistent with N.C.G.S. § 15A-1212(8) which relates to a jury recommendation of the imposition of the death penalty and allows a challenge for cause against a prospective juror who, "[a]s a matter of conscience, regardless of the facts and circumstances, would be unable to render a verdict with respect to the charge in accordance with the law of North Carolina."

Our reading of the official commentary to N.C.G.S. § 15A-1212(8) indicates that this section, a codification of the rule in *Witherspoon v. Illinois*, 391 U.S. 510, 20 L.Ed. 2d 776 (1968) (challenge for cause where a juror states his unequivocal opposition to capital punishment), was intended to apply not only to the death qualification of prospective jurors in capital cases but also generally to qualifying jurors in all cases. This is because, as the commentary makes clear, "[it was] determined that in other situations certain jurors might, regardless of the circumstances, refuse to vote for conviction." In the case sub judice, defendant faced mandatory life imprisonment on each of five charges. The reasoning in *Witherspoon* may logically be extended to a situation such as this, where it is entirely reasonable to believe that jurors might balk at convicting defendant on some or all charges because of the severity of the punishment. *See Buchanan v. Kentucky*, 483 U.S. ---, 97 L.Ed. 2d 336 (1987) ("death qualification" of jury not error where defendant being tried on noncapital murder charge jointly with codefendant being tried on capital murder charge). It is within the discretion of the trial judge, who has the opportunity to see and hear the juror on voir dire and to make findings based on the juror's credibility and demeanor, to ultimately determine whether the juror could be fair and impartial. *See Wainwright v. Witt*, 469 U.S. 412, 83 L.Ed. 2d 841 (1985); *O'Bryan v. Estelle*, 714 F. 2d 365 (5th Cir. 1983), *cert. denied*, 465 U.S. 1013, 79 L.Ed. 2d 245 (1984); *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1879).

[4]  The primary goal of juror voir dire is to ensure that only those persons are selected to serve on the jury who could render a fair and impartial verdict. An examination of the transcript reveals that the prosecutor asked the prospective jurors the same question in essentially the same way: "If you are satisfied at the conclusion of the evidence in this case that the defendant is guilty

beyond a reasonable doubt, would the punishment imposed, a mandatory life sentence, prevent you from returning the verdict of guilty?" This question is acceptable both in form and in substance. Merely because the question fails to incorporate either the "matter of conscience" or "regardless of the facts and circumstances" language of section 15A-1212(8) does not make it improper. We find no error in the trial court's permitting these questions.

[5] Second, defendant maintains that a challenge for cause was improperly allowed against prospective juror Bill Seagraves. During the voir dire of Mr. Seagraves, the following transpired:

THE COURT: Do you know of any reason why you couldn't be fair and impartial to both sides in this case during the course of this trial?

MR. SEAGRAVES: Well, no, not really.

. . . .

THE COURT: Mr. Seagraves, did I detect a little hesitation on your part just now?

MR. SEAGRAVES: Well, I'll tell you what. I was in the marines myself. I was in during the Korean War. I seen things that, you know—I've seen a lot—I'd just rather not talk about it. I was in during the Korean War.

. . . .

MR. CARROLL: Would that affect your ability to sit on this case in any way?

MR. SEAGRAVES: I don't know. Because I don't believe in capital punishment.

THE COURT: Let me just reiterate. There's no question of capital punishment in this case. . . .

. . . .

MR. CARROLL: You feel that that experience [in Korea] could somehow affect your ability to be fair and impartial?

MR. SEAGRAVES: It could. Now, I ain't saying it would. Of course, if you start in and it gets, you know, day after day a

little more involved, you know, it could be—I ain't saying it would. I ain't saying that, you know.

Following this response, the state challenged the juror for cause and defense counsel objected. After a bench conference, the voir dire examination of Mr. Seagraves continued. After making further inquiries of the juror in an attempt to clarify his answers, court was recessed. When court reconvened the next morning, the trial judge, in the absence of the jurors, heard argument from counsel on the challenge for cause to Mr. Seagraves. The trial court thereafter made the following findings of fact:

(2) [T]hat the Court had the opportunity to see and observe the juror, or potential juror, during his examination by the district attorney and by the Court and observe the demeanor and manner of the juror, to assess and determine what weight and credibility should be given to the responses of the juror, potential juror, and, independently, to assess the potential juror's ability to perform his duties as a juror;

(3) That in the course of the questioning in the voir dire examination the potential juror volunteered in a manner unrelated to the question directed to him that his military service in the Korean conflict might in some way affect his ability to be fair and impartial as a juror in this matter;

(4) That upon extensive questioning, both by the Court and the district attorney, he was unable to indicate how it might affect his ability and, indeed, did not respond directly to those questions both by the Court and the district attorney;

(5) That the potential juror's responses to numerous questions put to him by the Court and the district attorney were frequently unresponsive and inappropriate . . . .

The court then concluded that Mr. Seagraves was "unable to perform his duties as a juror and render a fair and impartial verdict in these cases," pursuant to N.C.G.S. § 15A-1212(9), and allowed the state's challenge for cause.

Challenges for cause in jury selection are matters in the discretion of the court and are not reviewable on appeal except for abuse of discretion. *State v. Watson*, 281 N.C. 221, 188 S.E. 2d

289, *cert. denied*, 409 U.S. 1043, 34 L.Ed. 2d 493 (1972). A thorough reading of the voir dire examination of Mr. Seagraves confirms that his answers were indeed confused, confusing, unresponsive, and ambiguous. We find no abuse of discretion in the trial court's ruling.

[6]   Third, defendant argues that while arguments were being heard on the state's challenge for cause, Mr. Seagraves and eleven other jurors were sent to the jury room for approximately one hour. Defendant moved for a mistrial, asserting a presumption of prejudice when a person not a member of the jury is allowed to be closeted with the jury for any period of time. The trial court heard arguments of counsel on this motion and then reconvened the jury panel. The court thereupon asked of each individual juror questions to the following effect:

(a) [Juror's name], during the time that the 12 jurors were back in the jury room this morning, did anyone who was present there in any way attempt to or was there any discussion, whatsoever, in any way regarding these cases and charges against the defendant?

(b) Was anything at all said or done, [juror's name], by anyone there that you feel would in any way affect your ability to proceed as a fair and impartial juror both for the state and the defendant in these cases?

Each juror responded in the negative to both questions. The court then denied the defendant's motion for mistrial and alternative motion to quash the jury, concluding that Mr. Seagraves' confinement with the eleven passed jurors "would in no way destroy the impartiality of the 11 members of the jury that had previously been passed, either individually or collectively" and "would not improperly influence [their] action," and that they "could and can render a fair and impartial verdict."

Upon a motion for mistrial, it is within the discretion of the trial court to determine whether substantial and irreparable prejudice to the defendant's case has occurred. *State v. Calloway*, 305 N.C. 747, 291 S.E. 2d 622 (1982). Defendant argues that Mr. Seagraves' mere presence in the jury room created a presumption of prejudice, automatically requiring a new trial. In support of this proposition, defendant cites the case of *State v. Bindyke*, 288 N.C.

608, 220 S.E. 2d 521 (1975). However, that case is inapposite. In *Bindyke*, a mistrial was granted because an alternate juror was present in the jury room during jury deliberations. At the heart of the Court's holding in *Bindyke* was the appearance of impropriety during the *deliberations* of the jury. This was not the situation here, where the incident occurred prior to trial. In the present case, a potential juror who was ultimately disqualified from service was allowed to remain in the jury room with passed jurors prior to empanelment. The trial court conducted a thorough examination of the selected jurors in order to determine whether there had been any discussion of the case while they were in the jury room. There was no evidence that they discussed the case amongst themselves at any time during the period that Mr. Seagraves was in the jury room, and each juror affirmed that he or she would be able to fairly and impartially serve on the jury. Without more, it cannot be said that Mr. Seagraves' mere presence in the jury room tainted the jury in any way. The trial court did not abuse its discretion by these rulings.

By his next assignments of error, defendant challenges the propriety or the admissibility of various segments of the testimony of three expert witnesses: psychologist Michie Harriss Dew, pediatrician Martha Sharpless, and Chief Medical Examiner Dr. Page Hudson.

[7] Defendant first complains that Dr. Dew's testimony relating to the personality and IQ tests administered to the victim were inadmissible. In the course of the direct examination, when she was asked about the victim's performance on these tests, Dr. Dew said that the victim responded to the test questions in an "honest fashion . . . admitting that she was in a fair amount of emotional distress." Defendant contends that the testimony was not relevant to any fact in issue; that the state did not lay a proper foundation for its admission; and that it violated the rule prohibiting an expert witness from stating an opinion as to the guilt or innocence of the defendant or the credibility of a witness. N.C.R. Evid. 608 and 405; *State v. Aguallo*, 318 N.C. 590, 350 S.E. 2d 76 (1986); *State v. Heath*, 316 N.C. 337, 341 S.E. 2d 565 (1986); *State v. Keen*, 309 N.C. 158, 305 S.E. 2d 535 (1983). We disagree with defendant's contentions. Dr. Dew explained the purpose of the psychological tests and the way in which they are administered in addition to discussing the victim's performance on them. The

mental and emotional state of the victim before, during, and after the offenses as well as her intelligence, although not elements of the crime, are relevant factors to be considered by the jury in arriving at its verdicts. Any expert testimony serving to enlighten the jury as to these factors is admissible under Rule 702 of the North Carolina Rules of Evidence. We do not consider the testimony of this witness that the victim answered the test questions in an "honest fashion" to be an expert opinion as to her character or credibility. It was merely a statement of opinion by a trained professional based upon personal knowledge and professional expertise that the test results were reliable because the victim seemed to respond to the questions in an honest fashion: her patient did not attempt to give false responses on a psychological test, thereby skewing the test results and rendering the results unreliable. By this answer Dr. Dew was not saying that she believed the victim to be truthful, but rather that she gave truthful answers to the test questions. The psychologist's testimony went not to the credibility of the victim but to the reliability of the test itself. *Cf. State v. Kim*, 318 N.C. 614, 350 S.E. 2d 347 (1986); *State v. Aguallo*, 318 N.C. 590, 350 S.E. 2d 76; *State v. Heath*, 316 N.C. 337, 341 S.E. 2d 565.

[8]   Defendant also argues that Dr. Dew's testimony that the victim was greatly afraid of her father and her testimony as to behavior of and statements by the victim which formed the basis of this opinion was incompetent. Defendant charges that the testimony was irrelevant to any fact in issue; that parts of it were not corroborative of any of the victim's prior testimony; that it served as an improper attempt to bolster the credibility of the victim and comment on defendant's guilt; and that it usurped the function of the jury to observe the victim's demeanor and to draw its own inferences therefrom. We are not persuaded by defendant's arguments, as we believe the child's fear of her father was relevant to the case and was a proper subject for expert testimony. Moreover, several witnesses testified without objection as to the victim's intense fear of her father. Defendant has therefore lost the benefit of the objection. *State v. Murray*, 310 N.C. 541, 313 S.E. 2d 523 (1984); *State v. Oliver*, 309 N.C. 326, 307 S.E. 2d 304 (1983).

[9]   Next, defendant says that it was improper to allow both Dr. Dew and the pediatrician, Dr. Sharpless, to testify concerning the

symptoms and characteristics of sexually abused children and to state their opinions that the symptoms exhibited by the victim were consistent with sexual or physical abuse. We find no error in the admission of this testimony, which was a proper topic for expert opinion. Where scientific, technical, or other specialized knowledge will assist the fact finder in determining a fact in issue or in understanding the evidence, an expert witness may testify in the form of an opinion, N.C.R. Evid. 702, and the expert may testify as to the facts or data forming the basis of her opinion, N.C.R. Evid. 703. The testimony of both of these witnesses, if believed, could help the jury understand the behavior patterns of sexually abused children and assist it in assessing the credibility of the victim. Furthermore, expert opinion on an ultimate issue is admissible. N.C.R. Evid. 704.

Other states have addressed this issue and held that testimony by qualified experts about characteristics typically observed in sexually abused children, such as secrecy, helplessness, delayed reporting, initial denial, depression, extreme fear, nightmares with assaultive content, poor relationships and school performance, is properly admissible under similar evidence statutes. *People v. Koon*, 724 P. 2d 1367 (Colo. App. 1986); *Allison v. State*, 179 Ga. App. 303, 346 S.E. 2d 380 (1986); *State v. Kim*, 64 Haw. 598, 645 P. 2d 1330 (1982); *State v. Myers*, 359 N.W. 2d 604 (Minn. 1984); *State v. Carlson*, 360 N.W. 2d 442 (Minn. App. 1985); *In the Matter of Michael G.*, 129 Misc. 2d 186, 492 N.Y.S. 2d 993 (1985); *State v. Middleton*, 294 Or. 427, 657 P. 2d 1215 (1983).

The fact that this evidence may support the credibility of the victim does not alone render it inadmissible. Most testimony, expert or otherwise, tends to support the credibility of some witness. Furthermore, although Dr. Sharpless was permitted to testify as to her diagnosis of physical and sexual abuse of the victim, this testimony was later struck and the jury instructed to disregard it. Thus, any error with respect to that testimony was harmless.

[10] Finally, defendant argues that the trial judge erred in permitting the state's rebuttal witness, Dr. Page Hudson, Chief Medical Examiner for the state of North Carolina, to testify that in his opinion the scratch marks on the victim's back were not consistent with self-mutilation, and in allowing Dr. Sharpless to offer her

opinion that the injuries were neither accidental nor self-inflicted. Basically, defendant contends that this testimony is not a proper matter for expert testimony under N.C.R. Evid. 702 and that these remarks effectively conveyed to the jury the witnesses' belief that the victim was not lying, in violation of N.C.R. Evid. 608(a). Again, we believe that this testimony was relevant and that it was helpful to the jury in determining the issues at trial. Ordinarily jurors are not skilled at determining whether wounds are self-inflicted. Dr. Hudson is an acknowledged expert in questions of this type. He has testified in hundreds of cases on the issue of causation of wounds. Such testimony, and that of Dr. Sharpless, would assist the jury in arriving at a just verdict and is admissible under N.C.R. Evid. 702. Trial judges are accorded wide discretion in determining the admissibility of expert testimony. *State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370 (1984). These assignments of error are overruled.

[11] Defendant's next assignment of error relates to the trial court's refusal to allow into evidence certain defense exhibits. Specifically, the trial court sustained the state's objections to the admission of state's exhibit 60, a torn school picture of the victim which was found in the drawer of her bedside table, and state's exhibits 113, 114, and 115, which are three of the victim's dolls which were kept in her room in a box. The dolls had been intact, but sometime after 7 June 1985 when the victim left home, the dolls were found with the hair of two of the dolls cut off and the third doll decapitated. The defendant sought to introduce the picture and the dolls to show that the victim was preoccupied, if not obsessed, with child abuse. At trial defendant introduced into evidence articles relating to child abuse and incest which the victim's mother said she had found her reading. Defendant asserts that there was a reasonable inference that the victim mutilated the exhibits at issue while acting out her preoccupation with child abuse and also maintains that they were relevant to the issue of whether the victim's cuts and burns were self-inflicted. Defendant reasons that if the jury could reasonably infer that the victim mutilated the exhibits, it also could reasonably infer that she mutilated herself. There is no evidence that the victim damaged the exhibits. The record does not disclose when they were found, or what their condition had been at any specified time. It is entirely speculative as to when and by whom the ex-

hibits were damaged. More than a year passed between the time of the crimes and the trial. Without a proper foundation the exhibits were not admissible as evidence. *See State v. Campbell*, 311 N.C. 386, 317 S.E. 2d 391 (1984).

[12] Next defendant assigns error to the trial court's reference to "the victim," alleging that this amounted to an improper expression of opinion in contravention of N.C.G.S. § 15A-1222. Our review of the transcript reveals that prior to the voir dire of the jury, while the trial judge was listing for the prospective jurors the five offenses with which defendant was charged, he referred to the "alleged victim" during his listing of the first, second, fourth, and fifth offenses, but used "the victim" during his reading of the third offense. We first note that the defendant did not object to the wording of the court. We find this remark to have been a mere lapsus linguae and not prejudicial to defendant. *State v. Craig and State v. Anthony*, 308 N.C. 446, 302 S.E. 2d 740 (1983). In the same vein, we also hold that a subsequent reference by the district attorney to "the victim" did not prejudice the defendant. When the prosecutor used the phrase "the victim," defendant objected and the trial court ordered the jury to disregard the terminology. Thus, any supposed error was cured by the trial court's instruction. *State v. Pruitt*, 301 N.C. 683, 273 S.E. 2d 264 (1981).

[13] By his next assignment of error defendant challenges the admission into evidence of certain testimony of Gary Goodrich, a family worker at the Crossnore School where the victim was living at the time of trial. Goodrich testified that the victim informed him that her father had burned her with an iron and then insisted that she say that she had burned herself with a curling iron. Goodrich also testified that she told him that whenever the family went to the mental health center, her father "would tell the family what to say and that if she did not say what he told them to, he would kill her." Defendant's contention is that this testimony contained "new" evidence and thus was not corroborative and that the trial judge erred when defendant's motion to strike on that basis was denied. We disagree. The victim had previously testified as follows:

Q. And prior to the time of June of 1985 when you were seeing Dr. Sharpless, did you tell her what your dad had done to you?

A. No.

Q. Why didn't you?

A. Because I was scared.

Q. What were you scared of?

A. My dad.

Q. And when you told Dr. Sharpless that you accidentally dropped a curling iron on your arm, why did you tell her that?

A. Because he told me to tell her that.

Q. Who told you to tell her that?

A. My dad.

Goodrich's testimony, then, was in fact corroborative of this prior testimony. Corroborative testimony may contain "new" or additional information when it tends to strengthen and add credibility to the testimony which it corroborates. *State v. Ramey*, 318 N.C. 457, 349 S.E. 2d 566 (1986). There was no error in the trial court's admitting this testimony into evidence.

[14] Defendant next brings forth several assignments of error which involve the instructions of the trial court. First, he alleges that the trial court should have submitted to the jury the lesser included offense of assault on a female and relies primarily on the case of *State v. Drumgold*, 297 N.C. 267, 254 S.E. 2d 531 (1979), for support. In *Drumgold*, it was necessary for the state to prove that the defendant overcame the will of the victim by the use of a deadly weapon in order to support a conviction for rape in the first degree. The evidence of the defendant and that of the victim conflicted on the issue of whether the defendant actually had a deadly weapon in his possession on the day of the alleged offense. The Court held that an instruction on rape in the second degree was warranted because the jury could believe that no deadly weapon was used and that the victim submitted to intercourse out of fear or duress. Defendant argues that *Drumgold* applies here because in both cases the defendant denied committing the offense, the testimony of the victim and of the defendant was contradictory, and there was testimony other than that of the defendant that the defendant did not commit the crime. *Drumgold* is

not applicable. We find no basis in the evidence for an instruction on the lesser included offense. It is the duty of the trial judge to instruct only upon matters arising upon the evidence at trial. *State v. Austin*, 320 N.C. 276, 357 S.E. 2d 641 (1987). We find that the evidence is clear and positive with respect to each element of the sexual offenses with which the defendant was charged, and there is no evidence pointing to the commission of a lesser included offense which would require an instruction from the trial court. *State v. Wright*, 304 N.C. 349, 283 S.E. 2d 502 (1981). Furthermore, as the Court stated in *State v. Lampkins*, 286 N.C. 497, 504, 212 S.E. 2d 106, 110 (1975):

> The mere possibility that the jury might believe part but not all of the testimony of the prosecuting witness is not sufficient to require the Court to submit to the jury the issue of the defendant's guilt or innocence of a lesser offense than that which the prosecuting witness testified was committed.

Thus there was no error by the trial court in this regard. *State v. Hardy*, 299 N.C. 445, 263 S.E. 2d 711 (1980).

[15] Second, defendant complains that the trial judge erred in failing to instruct, pursuant to defendant's written request, (1) that it is the function of the jury to assess the credibility of a witness, (2) that the fact that the court qualified a witness as an expert does not indicate whether the jury should believe or disbelieve that witness, and (3) that the court harbors no opinion as to whether any witness, lay or expert, is either credible or incredible. The trial court instructed the jurors that they "should consider the opinion of an expert witness, but you are not bound by it." As we understand defendant's argument, then, the trial court erred in failing to instruct the jury that it was permitted to completely disregard or reject the testimony of expert witnesses. The trial court did not err in its failure to give the instructions tendered by defendant. The trial court charged the jury in substance on the matters contained in defendant's requested instructions. *State v. Bailey*, 254 N.C. 380, 119 S.E. 2d 165 (1961). The trial judge emphasized to the jury that it was to be the sole judge of the credibility of each and every witness. He then went on to instruct:

> You've heard evidence from witnesses who have testified as expert witnesses. An expert witness is permitted to testi-

fy in the form of an opinion in a field where he or she purports to have specialized skill or knowledge.

As I've instructed you, you are the sole judges of the credibility of each witness and the weight to be given to the testimony of each witness. In making this determination as to the testimony of an expert witness, you should consider any of the other tests of weight and credibility about which I've instructed you, the evidence with respect to the witness's training, qualifications and experience or the lack thereof, the reasons, if any, given for the opinion, whether or not the opinion is supported by facts that you find from the evidence, whether or not the opinion is reasonable, and whether or not it is consistent with the other believable evidence in the case.

As I've already told you, members of the jury, you are the finders of facts in these cases. You should, therefore, consider the opinion of an expert witness, but you are not bound by it. In other words, you are not required to accept an expert witness's opinion to the exclusion of the facts and circumstances disclosed by other testimony.

These instructions on the credibility of lay and expert witnesses are sufficient. Also, the trial judge specifically told the jury that he had no opinion as to whether any part of the evidence should be believed or disbelieved. We overrule these assignments of error. Third, defendant argues that the court erred in assigning a specific alleged act of sexual offense to each charge from the bills of indictment. This argument is feckless.

Finally, defendant argues that the trial court erred in overruling defendant's motions for judgment of nonsuit and for dismissal of the charges and indictments against him, made at the conclusion of the defendant's evidence and at the close of all the evidence, and that the trial court further erred in signing and entering the judgment of imprisonment in each case. Suffice it to say that there was substantial evidence to support the allegations of the state. The issue was for the twelve and was resolved against the defendant.

No error.