IN THE MATTER OF RONNIE LEON LUCAS

No. 8827DC1156

(Filed 5 July 1989)

1. **Criminal Law § 73.5; Rape and Allied Offenses § 4— three-year-old sexual assault victim — statements for medical diagnosis and treatment — admissibility of statements**

Statements of a three-year-old child to her mother regarding what defendant allegedly did to her were made within several days of the alleged incident and resulted in the child's receiving, within fourteen days, medical attention at a local hospital and a subsequent evaluation by another doctor; therefore, the statements were for the purpose of medical diagnosis or treatment and were properly admitted as substantive evidence pursuant to N.C.G.S. § 8C-1, Rule 803(4). Furthermore, the admission of the hearsay testimony did not infringe upon defendant's constitutional right to confrontation as the evidence was both necessary and trustworthy.

2. **Criminal Law § 73.5— three-year-old sexual assault victim — statements to doctor for medical diagnosis and treatment — doctor's testimony admissible**

A doctor could properly testify concerning statements of a three-year-old who was allegedly sexually abused, since the doctor examined the child two weeks after the events in question when the child's mother took her to the doctor at the police officer's suggestion; the doctor examined the child approximately four months prior to trial of the case; after examination, the doctor did not treat the child but determined that she exhibited some of the symptoms and characteristics of sexually abused children and recommended a "psychological follow-up" by another doctor; and the examination was thus for the purpose of medical treatment or diagnosis and was not solely for the purpose of preparing and presenting the State's theory at trial.

3. **Criminal Law § 89.2— three-year-old's statements to officer — admissibility to corroborate testimony of mother and doctor**

An officer's testimony as to statements made to him by a three-year-old who had allegedly been sexually abused was properly admitted to corroborate the testimony of the mother and a doctor concerning statements the child made to them.

4. **Criminal Law § 51; Rape and Allied Offenses § 4— credibility of children in general — doctor's testimony admissible**

The trial court did not err in allowing a doctor to testify as to the credibility of children in general who report sexual abuse, since the pediatrician was in a better position than the trier of fact to have an opinion on that subject.

5. **Criminal Law § 51; Rape and Allied Offenses § 4— sexually abused children in general — doctor's testimony as to symptoms and characteristics admissible**

A pediatrician's failure to give an opinion as to whether a child was sexually abused was not a bar to the doctor's testifying as to the symptoms and characteristics of sexually abused children in general and whether the symptoms exhibited by the child were consistent with sexual or physical abuse.

6. **Rape and Allied Offenses § 5— first degree sexual offense — sufficiency of evidence**

Evidence was sufficient to support the offense of first degree sexual offense where it tended to show that the child was three years old and defendant was fourteen years old at the time of the offense, and there was substantial circumstantial evidence that the juvenile penetrated the anal opening of the child with his penis.

APPEAL by juvenile from *Gaston (Harley B.), Judge.* Order entered 17 June 1988 in District Court, GASTON County. Heard in the Court of Appeals 18 April 1989.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General T. Lane Mallonee, for the State.*

*Assistant Public Defender Gay R. Atkins for defendant-appellant.*

GREENE, Judge.

Ronnie Leon Lucas (hereinafter "juvenile"), age fourteen, was alleged in a juvenile petition to have committed a sexual offense with a three-year-old female (hereinafter "child") in violation of N.C.G.S. Sec. 14-27.4(a)(1) (1986). The trial judge found facts and adjudicated the juvenile to be delinquent and placed him on twelve months probation. The juvenile appeals.

At the adjudicatory hearing, the trial judge, after hearing testimony from the child, determined without objection that she was not competent to be a witness in the case. The State's evidence, to which there was no objection, tends to show the child was allowed by her mother to leave her house on or about 16 February 1988 and go into the woods, approximately twenty-five feet from the child's house, to play with her two brothers, ages six and seven, and the juvenile. Some "five to ten minutes" later the child came out of the woods crying. The mother then was allowed to testify, over objection, that the child told her that "Ronnie was mean to me" and that "her bottom was sore." The mother testified she did not check her child's bottom closely but that it appeared "raw and irritated" and that she put some "cornstarch and . . . Desitin on her." The mother further testified, over the objection of the juvenile, that several days later the child told her the juvenile had taken his "whacker" out and "had stuck it at her" and pointed to her bottom. The mother testified that the child "refers to a boy's . . . privates as a 'whacker,' that's just her term." The mother testified that during the remainder of February and March the child "went through bed wetting," "[s]he was very clinging," "[s]he kinda reverted back to a real babish thing," and that she was afraid to go to church and to pre-school.

Sergeant Bill May of the Belmont Police Department testified that the mother brought the child to his office and that he talked to the mother and the child on the afternoon of 22 February 1988. Over the juvenile's objection, the policeman was allowed to testify that the child told him "that Ronnie pulled [down] her pants and put his 'whacker' in her." The policeman further testified that on that same day he "transported them to Gaston Memorial Hospital to have her examined by a doctor." At the hospital, the child was seen by a doctor and the mother received a prescription for the child. About a week later, at the suggestion of Sergeant May, the mother took the child to another doctor, Dr. Ellis Fisher.

Dr. Fisher, a pediatrician at the Gastonia Children's Clinic, was accepted as an "expert witness in medicine with a specialty in pediatrics" and examined the child in his office on 29 February 1988. The reason for the examination, in the words of the doctor, was to determine "if there was any evidence of sexual abuse." Dr. Fisher was allowed, over the juvenile's objection, to testify that the child told him that the juvenile "pulled his 'whacker' out and pulled my pants down." Dr. Fisher further testified:

**IN RE LUCAS**

[94 N.C. App. 442 (1989)]

A. And then [child] said that he put a spring in me and I questioned her, "Where was this spring?", "On his whacker".. Did it hurt when he put this spring in you? She said yes. Did he tell you that he had a spring and she said yes. Then I asked her "Where did he put it in you, can you show me?" Show me on the doll baby where he put it and I asked her to pull the doll baby's pants down and "Where did he put it in?"; she pointed to the vaginal area of the female doll. Then I asked her, "Did he do this one time?" and she indicated two times. She said that it was on two different days.

. . . .

A. . . . In obtaining the rectal culture, she stated that this was where Ronnie put his "whacker". When I did the vaginal exam, she said, "This is not where Ronnie put his whacker." . . . .

. . . .

A. The rectal structure appeared to be normal. There were no tears, lacerations or other abnormalities or alteration than normal [word not audible] tone. It was a normal examination. . . .

The juvenile testified he did go into the woods with the child and her two brothers and his brother, age eight. He testified they were in the woods about an hour and a half "building the clubhouse." He denied ever pulling the child's "pants down" and the only time he had ever touched her was "when she rode to school with us" when I helped "put her in the car."

---

This appeal presents the issues of whether the trial court erred in: I) allowing into evidence out-of-court statements of the child, who was declared by the trial court to be incompetent to testify, through the testimony of (A) the mother of the child, (B) Dr. Ellis Fisher, and (C) Sergeant Bill May; II) allowing Dr. Fisher to testify that the "ability . . . to create testimony . . . ought to be . . . foreign to the child of pre-school"; III) allowing Dr. Fisher to testify as to the general symptoms and characteristics of sexually abused children; and IV) denying the juvenile's motion to dismiss the petition at the close of all the evidence.

I

After the trial court determined the child "was not competent to be a witness" in the case, the State through the testimony of the mother, Dr. Fisher, and Sergeant May offered the out-of-court statements of the child. This testimony was hearsay "because the statements were made by one other than the declarant at trial and were offered to prove the truth of the matter asserted," *State v. Bullock*, 320 N.C. 780, 782, 360 S.E. 2d 689, 690 (1987), i.e., that the juvenile had sexually assaulted the child. The juvenile contends the evidence is inadmissible hearsay and does not come within the purview of any of the hearsay exceptions. The State contends the out-of-court statements of the child made to the mother and to the doctor are admissible under the medical diagnosis or treatment exception of N.C.G.S. Sec. 8C-1, Rule 803(4) (1988).

Hearsay statements are admissible into evidence if made for the purposes of medical diagnosis or treatment and if reasonably pertinent to the diagnosis or the treatment. N.C.G.S. Sec. 8C-1, Rule 803(4); *State v. Aguallo*, 318 N.C. 590, 596, 350 S.E. 2d 76, 80 (1986). However, in a criminal trial where the person making the out-of-court statements does not testify, the State is prohibited, by virtue of the Confrontation Clauses of the State (Article I, Section 23) and Federal (Sixth Amendment) Constitutions, from introducing hearsay evidence unless the proponent of the testimony shows "the necessity for using the hearsay declaration" and "the inherent trustworthiness of the declaration." *State v. Deanes*, 323 N.C. 508, 525, 374 S.E. 2d 249, 260 (1988), *cert. denied*, --- S.Ct. --- (1989); *State v. Gregory*, 78 N.C. App. 565, 568, 338 S.E. 2d 110, 112 (1985), *disc. rev. denied*, 316 N.C. 382, 342 S.E. 2d 901 (1986).

A

[1] The statements of the child to the mother regarding what the defendant allegedly did to her were made within several days of the alleged incident and resulted in the child receiving, within fourteen days, medical attention at a local hospital and a subsequent evaluation by Dr. Fisher. Therefore, the statements were for the purposes of medical diagnosis or treatment. *See State v. Smith*, 315 N.C. 76, 85, 337 S.E. 2d 833, 840 (1985). Furthermore, the child's statements were pertinent to diagnosis and treatment as they suggested to the doctors the nature of the problem which in turn directed the doctors in their examination of the child. *See Aguallo*, 318 N.C. at 597, 350 S.E. 2d at 81. Therefore, the mother's

testimony regarding her conversations with her child was properly admitted as substantive evidence pursuant to Rule 803(4). *See Smith,* 315 N.C. at 85, 337 S.E. 2d at 840.

We also conclude the admission of the hearsay testimony did not infringe upon the defendant's constitutional right to confrontation as the evidence was both necessary and trustworthy. The unavailability of the child to testify at the trial, as a result of the trial court's declaration of incompetency, and the evidentiary importance of the child's statements adequately demonstrates the necessity for using the hearsay declaration. *See Gregory,* 78 N.C. App. at 568, 338 S.E. 2d at 112-13; *State v. Jones,* 89 N.C. App. 584, 590, 367 S.E. 2d 139, 143 (1988). The trustworthiness of the child's out-of-court statements was not specifically determined by the trial judge. In order to allow effective appellate review, findings of fact and conclusions of law on the trustworthiness issue should appear of record. *See Smith,* 315 N.C. at 94, 337 S.E. 2d at 845. Nonetheless, even in the absence of "a showing of particularized guarantees of trustworthiness," through detailed findings, such out-of-court statements are deemed trustworthy if "the evidence falls within a *firmly rooted* hearsay exception." *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed. 2d 597, 608 (1980) (emphasis added); *see* Goldman, *Not So "Firmly Rooted": Exceptions to the Confrontation Clause,* 66 N.C. L. Rev. 1, 47 (1987) (suggesting that presumption of trustworthiness created by evidence within firmly rooted hearsay exception should be rebuttable). The United States Supreme Court recently had an opportunity to apply this rule and held that "a court need not independently inquire into the reliability" of statements sought to be admitted under the co-conspirator exception of the hearsay rule (equivalent to North Carolina Rule of Evidence 801(d)(2)(E)) because that exception is "firmly enough rooted in our jurisprudence." *Bourjaily v. United States,* 483 U.S. 171, 183, 1107 S.Ct. 2775, 2783, 97 L.Ed. 2d 144, 157 (1987). With this holding came an *apparent* rejection of cases holding that *all* statutory exceptions to the hearsay rule *per se* satisfy the confrontation clause. *E.g., United States v. Burroughs,* 650 F. 2d 595, 597, n.3 (5th Cir. 1981), *cert. denied,* 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed. 2d 483 (1981).

Whether a child's out-of-court statement to her mother, which results in medical treatment or diagnosis, is a "firmly rooted hearsay exception" is questionable. Statements to treating physicians, relevant to diagnosis or treatment, have long been recognized in

North Carolina as an exception to the hearsay rule and are therefore arguably firmly rooted in our jurisprudence. *See* 1 Brandis on North Carolina Evidence Sec. 161, p. 729 (3d ed. 1988); *cf.* Mosteller, *Child Sexual Abuse and Statements for the Purpose of Medical Diagnosis or Treatment*, 67 N.C. L. Rev. 257, 290 (1989) (statements to physicians that provide the basis for opinions not related to treatment are "not within a firmly rooted hearsay exception"). However, a child's out-of-court statement to her mother, which statement results in medical treatment or diagnosis, is a hearsay exception first recognized by our Supreme Court in 1985 in *Smith*. 315 N.C. at 84-85, 337 S.E. 2d at 840; *see Coy v. Iowa*, 108 S.Ct. 2798, 2803, 101 L.Ed. 2d 857, 867 (1988) (hearsay exception created by Iowa statute in 1985 "could hardly be viewed as firmly rooted").

Irrespective of the United States Supreme Court's guidance on the subject through *Roberts* and *Bourjaily*, this court in *Jones* adopted a *per se* rule and held that trustworthiness is established when the evidence falls within any statutory hearsay exception. 89 N.C. App. at 590, 367 S.E. 2d at 143. In addition to its conflict with cases of the United States Supreme Court, *Jones* conflicts with *Gregory* in which this court held that "[m]erely classifying a statement as a hearsay exception does not automatically satisfy the requirements . . . of the Sixth Amendment." *Gregory*, 78 N.C. App. at 568, 338 S.E. 2d at 112. Nevertheless, as *Jones* has not been overruled by our Supreme Court, we are bound. *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, --- S.E. 2d --- (1989). Accordingly, consistent with *Jones*, we determine the out-of-court statements of the child are necessarily trustworthy as they come within the requirements of Rule 803(4).

B

[2] The defendant contends the examination by Dr. Fisher was not for the purposes of medical treatment or diagnosis but instead was for the purpose of preparing and presenting the State's theory at trial and therefore does not support allowing Dr. Fisher to testify as to the out-of-court statements of the child. *See State v. Stafford*, 317 N.C. 568, 574, 346 S.E. 2d 463, 467 (1986) ("prerequisite to admissibility for substantive purposes of statements made to physicians is that they be 'made for purposes of medical diagnosis or treatment . . . .' ").

In determining if a medical examination was rendered for the purpose of "medical diagnosis or treatment" the following factors are relevant:

(1) whether the examination was requested by persons involved in the prosecution of the case; (2) the proximity of the examination to the victim's initial diagnosis; (3) whether the victim received a diagnosis or treatment as a result of the examination; and (4) the proximity of the examination to the trial date.

*Jones*, 89 N.C. App. at 591, 367 S.E. 2d at 144.

The record in this case reveals the child's mother took the child to Dr. Fisher's office at the suggestion of Sergeant May, approximately two weeks after the alleged sexual abuse. Dr. Fisher examined the child in his office approximately four months prior to the trial of this case in the Juvenile Court. Dr. Fisher testified that "the reason for the visit was to examine the child and see if there was any evidence of sexual abuse." After the examination, Dr. Fisher did not treat the child but determined from his conversations with and examination of the child that she exhibited some of the symptoms and characteristics of sexually abused children and recommended a "psychological follow-up" by another doctor.

The fact Dr. Fisher never treated the child is not determinative of whether his examination qualifies under Rule 803(4). *See United States v. Iron Thunder*, 714 F. 2d 765, 773 (8th Cir. 1983); 4 Weinstein's Evidence Sec. 803(4)[01], p. 803-146 (1988) ("Rule 803(4) rejects the distinction between treating and non-treating physicians"); *but see* Mosteller, *Child Sexual Abuse and Statements For the Purpose of Medical Diagnosis or Treatment*, 67 N.C. L. Rev. 257, 273 (1980) (suggesting the rationale of *Stafford* is "where no treatment is sought or intended, hearsay statements may be received only when used to form the basis of the doctor's opinion"). Dr. Fisher used the statements of the child in making his diagnosis and in recommending follow-up visits with another doctor. While Dr. Fisher's examination of the child did prepare him for his testimony at trial, it was clearly not the sole purpose for the examination. *Stafford*, 317 N.C. at 574, 346 S.E. 2d at 467 (physician's testimony not admissible as substantive evidence where sole purpose was for "preparing and presenting the state's . . . theory at trial"). We therefore conclude the trial court properly admitted Dr. Fisher's testimony as to the out-of-court statements of the child pursuant to Rule 803(4). Furthermore, relying on *Jones*, the admission of Dr. Fisher's hearsay testimony did not infringe upon the defendant's constitutional right to confrontation as the evidence was both necessary and trustworthy.

IN RE LUCAS

[94 N.C. App. 442 (1989)]

C

**[3]** Sergeant May's testimony as to the child's statements to him were admissible to corroborate the testimony of the mother and Dr. Fisher concerning the statements of the child made to them. *See State v. Chandler*, 324 N.C. 172, 182, 376 S.E. 2d 728, 734 (1989). We agree with the juvenile that the evidence is inadmissible for substantive purposes. *See Smith*, 315 N.C. at 82, 337 S.E. 2d at 838. The record reveals that Sergeant May's testimony was offered by the State and received by the trial court as corroborative evidence, not as substantive evidence. Accordingly, we find that Sergeant May's testimony was properly admitted.

II

**[4]** The juvenile next argues the trial court erred in allowing Dr. Fisher to testify as to the credibility of the child through the following testimony:

Q. . . . Have you made any studies with references to the truthfulness of young children, specifically under the age of five years or so?

. . . .

A. . . . That the younger children certainly can be altered but basically the ability to tell, to create testimony, artificially, especially in the area as sensitive as this is for the most part, ought to be pretty foreign to the child of pre-school as a rule. . . .

This court in *State v. Oliver*, 85 N.C. App. 1, 12, 354 S.E. 2d 527, 534, *disc. rev. denied*, 320 N.C. 174, 358 S.E. 2d 64 (1987), answered the question as to whether an expert can testify as to the "credibility of children in general." In *Oliver*, this court held that a pediatrician "was in a better position than the trier of fact to have an opinion on the credibility of children in general who report sexual abuse . . . [and] [h]is opinion is therefore admissible under Rule 702." *Id*. We also, like the *Oliver* court, determine that Dr. Fisher's opinion related to the general credibility of children, not credibility of the child in question, and that this testimony was more probative than prejudicial under Rule 403. Therefore, we conclude the trial court did not err in allowing Dr. Fisher to testify on the credibility of children in general who report sexual abuse.

### III

[5]  The juvenile argues the trial court erred in allowing the following testimony of Dr. Fisher:

Q. Dr. Fisher, what are some of the symptoms and characteristics of sexually abused children?

. . . .

A. Frequently the child would present symptoms relative, a female to the genitalia, bed wetting, changes in the urinary and voiding patterns, they may demonstrate things like vaginal discharge and rashes in the vaginal area.

Q. Is that with regard to whether penetration has been vaginally or anally?

. . . .

A. Yes, I think that they can have nonspecific irritations or even psychological directions of the hands to the vaginal area on that basis. There are the more nonspecific areas of symptomatology such as behavioral withdrawal, sleep disturbances, etc. That outside the physical findings and symptoms, those would be the major areas.

Q. Were the symptoms that you observed in [the child] consistent with the symptoms and characteristics you just testified to?

A. Yes, I think so, she was having bed wetting and then there was a rash in the vaginal area, certainly doesn't prove anything but they are certainly consistent as you said.

Specifically, the juvenile argues as Dr. Fisher never gave an opinion as to whether the child was abused, "he should not have been allowed to testify about children in general and [the child's] specific complaints." We disagree. In *State v. Kennedy*, 320 N.C. 20, 32, 357 S.E. 2d 359, 366 (1987), our Supreme Court allowed two experts, who at trial were prohibited from testifying as to whether the victim had been sexually abused, to testify as to the "symptoms and characteristics of sexually abused children and to state their opinions that the symptoms exhibited by the victim were consistent with sexual or physical abuse." *Id.* That Court determined that the testimony of the experts could be helpful to the jury in understanding "the behavior patterns of sexually abused

children" and could assist the jury in "assessing the credibility of the victim." *Id.* Therefore, consistent with *Kennedy*, Dr. Fisher's failure to give an opinion as to whether the child was sexually abused was not a bar to Dr. Fisher testifying as to the symptoms and characteristics of sexually abused children in general and whether the symptoms exhibited by the child were consistent with sexual or physical abuse.

Additionally, we reject any argument of the defendant that Dr. Fisher's testimony should be excluded under N.C.G.S. Sec. 8C-1, Rule 403. Under Rule 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." N.C.G.S. Sec. 8C-1, Rule 403 (1988). However, whether or not to exclude the evidence under Rule 403 is a matter "within the sound discretion of the trial judge," *State v. Mason*, 315 N.C. 724, 731, 340 S.E. 2d 430, 435 (1986), and there has been no showing that the trial court's decision to allow the evidence "was so arbitrary that it could not have been the result of a reasoned decision." *State v. Thompson*, 314 N.C. 618, 626, 336 S.E. 2d 78, 82 (1985).

## IV

**[6]** The juvenile finally argues the trial court erred in denying his motion to dismiss at the close of all the evidence on the grounds that the evidence was insufficient to support the offense charged.

A motion to dismiss for insufficiency of the evidence, made pursuant to N.C.G.S. Sec. 15A-1227 (1988), is essentially a motion for non-suit under N.C.G.S. Sec. 15-173 (1983). *State v. Griffin*, 319 N.C. 429, 432, 355 S.E. 2d 474, 476 (1987). The question for the court, when presented with a motion for dismissal, is "whether there is substantial evidence (1) of each essential element of the offense charged, or the lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E. 2d 114, 117 (1980). The evidence, whether "direct, circumstantial or both," *State v. Malloy*, 309 N.C. 176, 178-79, 305 S.E. 2d 718, 720 (1983), must be viewed in the light most favorable to the State and "the State is entitled to every reasonable inference that may be drawn therefrom supporting the charges against the defendant." *Griffin*, 319 N.C. at 433, 355 S.E. 2d at 476. The trial court is not required "to determine that the evidence excludes every reasonable hypothesis of innocence," *Malloy*, 309 N.C. at 178, 305 S.E. 2d at 720, as the test is whether the State has "offered substantial evidence of each element of the

charged offenses sufficient to convince a rational trier of fact beyond a reasonable doubt of defendant's guilt." *Griffin*, 319 N.C. at 433, 355 S.E. 2d at 476.

The elements essential to proof of first-degree sexual offense, N.C.G.S. Sec. 14-27.4(a)(1), are namely: "(1) the defendant engaged in a 'sexual act,' (2) the victim was at the time of the act twelve years old or less, and (3) the defendant was at least twelve years old and four or more years older than the victim." *Griffin*, 319 N.C. at 433, 355 S.E. 2d at 477. "A 'sexual act' includes anal intercourse, N.C.G.S. Sec. 14-27.1(4) (1986), which requires penetration of the anal opening by the penis." *Id.*

The evidence viewed in the light most favorable to the State, establishes the child was three years old and the defendant was fourteen years old at the time of the offense. Furthermore, there is substantial circumstantial evidence that the juvenile, with his penis, penetrated the anal opening of the child. Therefore, a reasonable inference of the juvenile's guilt of the crime charged may be drawn from the evidence and the trial court did not err in denying the juvenile's motion to dismiss. *See Powell*, 299 N.C. at 99, 261 S.E. 2d at 117 (where sufficiency of circumstantial evidence is questioned, the issue is "whether a reasonable inference of defendant's guilt may be drawn from the circumstances").

Affirmed.

Judges ARNOLD and LEWIS concur.