State v. Cole

---

STATE OF NORTH CAROLINA v. WINFRED A. COLE

No. 7312SC663

(Filed 24 October 1973)

Narcotics § 2— possession of heroin — second offense — insufficiency of indictment

Indictment charging that defendant unlawfully possessed heroin on 13 January 1973, this being defendant's "second offense of possession of the narcotic drug, heroin, he having previously been convicted on the 3rd day of November, 1970, in the Superior Court, Cumberland County" *is held* insufficient to charge a second offense of unlawful possession of heroin within the purview of a section of the Controlled Substances Act, G.S. 90-95(c), since that statute provides punishment for persons "convicted of a second violation of G.S. 90-95(a)(3)," and

defendant's 1970 conviction for possession of heroin was for violation of former G.S. 90-88, a section of the Uniform Narcotic Drug Act; although the indictment was sufficient to charge the offense of unlawful possession of heroin and the sentence imposed was within the limits authorized for a first conviction of that offense, the allegations concerning a prior conviction cannot be treated as mere surplusage where the State was permitted to introduce evidence of defendant's prior conviction which would not have been admissible if a prior conviction had not been alleged.

APPEAL by defendant from *Braswell, Judge,* 7 May 1973 Criminal Session of Superior Court held in CUMBERLAND County.

Defendant was indicted for unauthorized possession of heroin, second offense. He pled not guilty but did not testify. The jury returned a verdict of guilty as charged. Judgment was entered sentencing defendant to prison for a term of four years, this sentence to begin at the expiration of a sentence previously imposed upon defendant on 3 November 1970. Defendant appealed.

*Attorney General Robert Morgan by Deputy Attorney General R. Bruce White, Jr., and Associate Attorney General Jones P. Byrd for the State.*

*Assistant Public Defender Neill Fleishman for defendant appellant.*

PARKER, Judge.

The defendant contends that he was tried under a defective indictment. In pertinent part the indictment read:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, That Winfred Allen Cole . . . on or about the 13th day of January, 1973, . . . did unlawfully, wilfully, and feloniously possess a controlled substance, to wit: Heroin which is included in Schedule I of the North Carolina Controlled Substances Act this being the said Winfred Allen Cole's . . . second offense of possession of the narcotic drug, heroin, he having previously been convicted on the 3rd day of November, 1970, in Superior Court, Cumberland County, North Carolina, of possession of heroin on 17th day of July, 1970. . . ."

Defendant's timely motion to quash the indictment on the ground, *inter alia,* that "the charge of second offense possession, as alleged in the indictment, fails to allege facts sufficient to

constitute an offense against the laws of North Carolina," was denied, and the defendant duly excepted. We find defendant's exception to be well taken.

Unauthorized possession of heroin is made a crime by G.S. 90-95(a)(3), which in pertinent part is as follows:

> "(a) Except as authorized by this Article [Article 5 of G.S. Chap. 90], it shall be unlawful for any person:

> *    *    *    *    *

> "(3) To possess a controlled substance included in any schedule of this Article."

By G.S. 90-89(b)(10) heroin is listed in Schedule I of Article 5. G.S. 90-95(c) provides for punishment of second offenders of the offense specified in G.S. 90-95(a)(3) as follows:

> G.S. 90-95(c). "Any person convicted *of a second violation of G.S. 90-95(a)(3)* with respect to controlled substances included in Schedules I or II of this Article shall be guilty of a felony and shall be sentenced to a term of not less than five years nor more than 10 years or fined not more than ten thousand dollars ($10,000), or both, in the discretion of the court." (Emphasis added.)

Defendant in the present case had not been convicted previously of a violation of G.S. 90-95(a)(3). His 1970 conviction for possession of heroin was for violation of former G.S. 90-88, a section of the Uniform Narcotic Drug Act (Uniform Act) adopted by North Carolina in 1935. On 19 July 1971 the North Carolina General Assembly ratified a major revision of our drug laws, replacing the Uniform Act with the North Carolina Controlled Substances Act (Controlled Substances Act), effective 1 January 1972. It is this latter Act that governed defendant's more recent trial and governs his present appeal therefrom.

The State urges this Court not to confine itself to a literal reading of G.S. 90-95(c), arguing that the Legislature, despite the wording of the provision, intended to punish as second offenders those defendants previously convicted for unauthorized possession of heroin under statutes other than or preceding the Controlled Substances Act. The State would have us read G.S. 90-95(c) as though it read as follows:

> "(c) . . . Any person convicted of a second violation of *unauthorized possession* with respect to controlled substances included in Schedule I. . . ."

For reasons hereinafter set forth we are unable to read "a second violation of G.S. 90-95(a)(3)" as being the same as "a second violation of unauthorized possession."

It is a well established rule of statutory construction that criminal statutes must be strictly construed against the State and liberally in favor of the private citizen, with conflicts and ambiguities resolved in his favor. *State v. Pinyatello,* 272 N.C. 312, 158 S.E. 2d 596; *State v. Martin,* 7 N.C. App. 532, 173 S.E. 2d 47; 82 C.J.S., Statutes, Section 389(b)(1), p. 924. While courts will not adopt an interpretation which will lead to a strained construction of a statute or to a ridiculous result, and will be guided by legislative intent when construing criminal as well as civil statutes, upon careful consideration we find our adherence to the literal import of G.S. 90-95(c) neither strained nor contrary to legislative intent.

The original recidivist provision of the Uniform Act contained the following language:

"G.S. 90-111: Any person violating any provision of this Article shall, upon conviction, be punished for the first offense by a fine not exceeding one thousand ($1000) dollars, or by imprisonment for not exceeding 3 years, or both; and for any subsequent offense by a fine not exceeding three thousand dollars ($3000) or by imprisonment for not exceeding five years, or both."

In 1953, the scope of G.S. 90-111 was broadened to include the following provision:

"(a) . . . For a second violation of this article, *or where in case of a first conviction of violation of this article, the defendant shall previously have been convicted of a violation of any law of the United States, or of this or any other state, territory or district, relating to the . . . possession of narcotic drugs . . . and such violation would have been punishable in this State if the offending act had been committed in this State, the defendant shall be fined. . . .*" (Emphasis added.)

G.S. 90-111(a) remained unchanged thereafter until superseded 1 January 1972 by the Controlled Substances Act.

The initial legislative version of the Controlled Substances Act contained recidivist provisions similar to G.S. 90-111(a) of

the Uniform Act in its post-1953 form, the bill as originally introduced containing the following:

> G.S. 90-89(b)(6). "Any person convicted of a second or subsequent offense under this Article shall be subject to penalties as provided in G.S. 90-110." [House Bill 294 "H-1" page 14.]

> G.S. 90-110(d). "For purposes of this section, an offense shall be considered a second or subsequent offense, if, prior to his conviction of the offense, the offender has at any time been convicted of an offense or offenses under this Article *or under any statute of the United States or of any state relating to narcotic . . . drugs."* (Emphasis added.) [House Bill 294 "H-1" page 47.]

The Act, then House Bill 294, was referred to the House Judiciary Committee I on 24 February 1971. On 3 June 1971 the House approved the Committee's revision of Bill 294. The Committee had reorganized the proposed revision of Article 5, relocating the recidivist provisions and changing the language therein to read:

> G.S. 90-95(c). "Any person convicted of a second violation of G.S. 90-95(a)(3) shall be fined. . . ." [House Bill 294 "H-2" page 25.]

Before final ratification, this part of G.S. 90-95(c) was further amended to make it clear that only second violations with respect to substances listed in Schedules I and II were covered thereunder:

> G.S. 90-95(c). "Any person convicted of a second violation of G.S. 90-95(a)(3) with respect to controlled substances included in Schedules I and II of this Article shall be guilty of a felony and shall be sentenced. . . ." [House Bill 294 "H-3" page 26.]

G.S. 90-95(c) in this form was ratified by the General Assembly on 19 July 1971, and became effective 1 January 1972.

The General Assembly, in short, replaced the comprehensive language of the Uniform Act's provision for second offenders with the narrow provision of present G.S. 90-95(c), rejecting in the process similarly comprehensive language in the original House version of the Controlled Substances Act. If the Legislature intended by this action to limit the types of convictions for possession of heroin that qualify as prior convictions to

State v. Cole

actual violations of the Controlled Substances Act, it could hardly have used more specific language. Certainly there were numerous statutory models available to the drafters and legislators that contained various formulations of the interpretation now urged by the State; in addition to the superseded Uniform Act and the initial version of the Controlled Substances Act, the Uniform Controlled Dangerous Substances Act, from which the Controlled Substances Act was largely derived, and the codes of the 17 states that had adopted the Uniform Controlled Dangerous Substances Act contained similarly comprehensive language. Being most favorable to the State, the best we can say is that the legislative intent lying behind G.S. 90-95 (c) is unclear, and given such ambiguity, the defendant must be given the benefit of the doubt.

We note in passing that the General Assembly, by Ch. 654 of the 1973 Session Laws, amended G.S. 90-95, effective 1 January 1974. This amendment, *inter alia,* rewrote the recidivist provisions of the Controlled Substances Act. This change, however, does not affect the present appeal.

The indictment in the present case did correctly charge all elements of the offense of unlawful possession of heroin, and the sentence imposed was within the statutory limits authorized for a first conviction of that offense. We might, therefore, treat the allegations in the indictment concerning the prior conviction as mere surplusage except for the fact that the inclusion of these allegations resulted in substantial prejudice to the defendant. Defendant did not take the stand or otherwise put his character in issue. Therefore, had the charge against defendant been one of simple possession of heroin, the State would have been barred from introducing before the jury evidence of his prior conviction. 1 Stansbury's N. C. Evidence (Brandis Revision) § 91. In the present case the State did introduce such evidence, and in this the defendant suffered error which, in our opinion, was sufficiently prejudicial to warrant granting him a new trial.

We do not discuss appellant's remaining assignments of error since the questions presented may not recur upon a new trial. For the reasons stated above, defendant is awarded a

New trial.

· Chief Judge BROCK and Judge VAUGHN concur.