STATE OF NORTH CAROLINA v. NEIL STANLEY LEWIS

No. 8124SC987

(Filed 20 July 1982)

1. **Criminal Law §§ 42.1, 43.5— television news film—human skulls—admissibility in evidence**

    In a prosecution for being an accessory before and after the fact to the crimes of disturbing graves in violation of G.S. 14-150, a television news film was properly admitted to illustrate a sheriff's testimony where the sheriff sufficiently authenticated the film as an accurate portrayal of conditions he observed at the crime scene. Furthermore, the trial court properly admitted into evidence two human skulls found at the crime scene.

2. **Cemeteries § 3— accessory before and after fact to crimes of disturbing graves—sufficiency of evidence**

    The State's evidence was sufficient for the jury in a prosecution for being an accessory before the fact and an accessory after the fact to the crimes of disturbing graves where it tended to show that defendant encouraged the actual perpetrators to open graves and steal jewelry and dental work from the bodies interred there; defendant told them he would melt down and dispose of any gold they could steal and advised them what implements to take to the graveyard; defendant, at his own home, helped the perpetrators remove gold from teeth taken from the bodies; and defendant denied to the sheriff knowing anything about the robbery of the graves.

3. **Criminal Law § 11— accessory after the fact—failure to instruct on one alleged perpetrator**

    In a prosecution upon an indictment charging that defendant was an accessory to a crime committed by three other named men, defendant was not prejudiced by the court's omission of the name of one of the men from a portion of its instructions to the jury because there was no evidence linking defendant and such man.

4. **Criminal Law § 11— accessory after the fact—erroneous instruction—absence of prejudice**

    Although the trial court's instruction that defendant would be guilty of accessory after the fact to the crime of disturbing a grave if he assisted the perpetrators in escaping or attempting to escape detection, arrest or punishment "by accepting part of the proceeds of the crime of disturbing a grave and refusing to disclose his knowledge of the crime when asked to do so by law enforcement officers" was erroneous in that accepting part of the proceeds of the crime did not make defendant an accessory after the fact, such error was not prejudicial to defendant since all of the elements of the crime charged were presented to the jury and the erroneous portion of the instruction increased the state's evidentiary burden.

5. **Cemeteries § 3; Indictment and Warrant § 9.3— accessory after fact to disturbing graves—indictment—evidential allegations as surplusage**

An indictment was sufficient to charge defendant with being an accessory after the fact to the crime of disturbing graves in violation of G.S. 14-150 without the evidential allegation that defendant assisted the perpetrators "in concealing and disposing of things removed from said graves." Therefore, such allegation was mere surplusage and should be disregarded.

6. **Criminal Law § 138.1— accessory after the fact—more lenient sentence to perpetrators**

The trial court did not abuse its discretion in sentencing defendant to two consecutive ten-year terms upon his conviction on six counts of being an accessory after the fact to the crime of disturbing graves although the actual perpetrators received lesser sentences.

APPEAL by defendant from *Thornburg, Judge.* Judgment entered 25 April 1981 in Superior Court, MADISON County. Heard in the Court of Appeals 5 April 1982.

On the morning of 13 June 1980, Kevin Sams, Luther Aikens, and Louis Bollo entered the Safford family cemetery near Hot Springs. Equipped with implements, they set to work disturbing several graves. The men left hours later with human teeth, dental work, and various items of jewelry removed from the bodies interred there. Behind them the graveyard bespoke haste and desecration. Six graves had been opened. At trial, witnesses testified that bodies and bones were strewn about. The state introduced at trial a television news film depicting the scene, and the court permitted an expert to examine two skulls in the presence of the jury.

Kevin Sams, testifying for the state, said that he approached the sheriff and admitted his participation in the grave robbery. His testimony, and that of Aikens and Bollo, tended to show that defendant's residence was located a short distance from the cemetery. Aikens worked for defendant refurbishing his house, and introduced him to Kevin Sams, who was also working for defendant in June of 1980. Aikens testified, "In late April Mr. Lewis was on his front porch. You can see the cemetery from there. He said he couldn't understand how come it hadn't been robbed. That best he could find out there was a lot of money in it . . . if we was to do it, he would take a cut out of it. Take the stuff, melt it down, take (it) to California to sell it." Defendant told Aikens what tools they would need.

Sams, Bollo, and Aikens committed the robbery and went to defendant's home immediately thereafter. Defendant told them that they needed a chisel with which to remove gold from the teeth and, according to Sams, hammered some gold from the teeth. Aikens then sold two rings and a set of earrings to defendant. Defendant later denied any knowledge of the robbery upon questioning by the sheriff.

Defendant testified that he had never met or talked with Louis Bollo; that although he was aware that Aikens and Sams had gold teeth and jewelry in their possession when they arrived at his home on the morning of 13 June, he told them to take the loot "and get the hell out . . . ;" that he loaned Aikens $200 with which to pay a court fine; and that he found a ring and a gold tooth on the back porch of his house but flushed both down the toilet. He admitted keeping a red stone from the ring, however. He also admitted withholding information from the sheriff because, he said, he was afraid to speak while Aikens stood next to him at the time of questioning. He denied ever rendering assistance to Aikens, Sams or Bollo.

The trio were charged with conspiracy and six counts of disturbing graves, to which they pled guilty. Sams, who had been convicted previously of auto theft, was sentenced to ten years imprisonment as a committed youthful offender, suspended for a period of five years. Bollo was sentenced to five years for his participation. Aikens was given ten years, to run concurrently with a sentence he was then actively serving. He had numerous previous convictions.

Defendant was tried for being an accessory before the fact and an accessory after the fact to the crimes of disturbing graves in violation of G.S. 14-150, and was convicted of six counts of being an accessory after the fact of disturbing graves. With no prior convictions, he was sentenced to serve two ten-year terms, to run consecutively. He appeals the conviction, bringing forward five assignments of error.

*Attorney General Edmisten, by Assistant Attorney General Grayson G. Kelley, for the state.*

*Snyder, Leonard, Biggers and Dodd, by Keith S. Snyder and William T. Biggers, for defendant appellant.*

MORRIS, Chief Judge.

[1]　Defendant argues, by his first assignment of error, that the court erred by admitting into evidence a television news film and two human skulls. He contends that the evidence was not authenticated, and that it was irrelevant and inflammatory in light of the fact that the disturbance of the graves was stipulated.

The trial judge instructed the jury that the film was "offered and admitted for the sole purpose of illustrating or explaining the testimony of this or other witnesses who may appear before you . . . . It may not be considered by you for any other purpose." Sheriff E. Y. Ponder testified that he went to the cemetery on 19 June. The film was then shown over defense counsel's objection on the grounds of relevancy. When asked if the film accurately portrayed what he found at the cemetery, Sheriff Ponder replied in the affirmative. "Photographs are admissible in this State to illustrate the testimony of a witness, and their admission for that purpose under proper limiting instructions is not error." *State v. Crowder*, 285 N.C. 42, 49, 203 S.E. 2d 38, 43 (1974). Motion pictures are admissible under the rules applicable to still photographs. *State v. Strickland*, 276 N.C. 253, 173 S.E. 2d 129 (1970). We hold that the sheriff sufficiently authenticated the film as an accurate portrayal of conditions he observed at the scene of the crime, and that it was properly admitted to illustrate the sheriff's testimony. See *State v. Thomas*, 294 N.C. 105, 240 S.E. 2d 426 (1978). The sheriff further stated that he found two or three "heads" or skulls to be missing from bodies, and indicated that they were, at the time of trial, in the custody of Dr. Page Hudson, Chief Medical Examiner. Dr. Hudson testified that the skulls were in his possession, Sheriff Ponder having delivered them to him on 6 December. The skulls were then offered into evidence, again over defense counsel's objection. With regard to real evidence, "the trial judge possesses and must exercise a sound discretion in determining the standard of certainty required to show that the object offered is the same as the object involved in the incident giving rise to the trial and that the object is in an unchanged condition." *State v. Harbison*, 293 N.C. 474, 484, 238 S.E. 2d 449, 454 (1977). We are not inclined to disturb the judge's ruling of admissibility in the case at bar. We must also reject defendant's contention that the admission of the film and skulls was inflammatory and the evidence irrelevant in light of

the fact that the disturbance of the graves was stipulated. The stipulation that the graves had been disturbed did not preclude the state's introduction of this evidence. *State v. Cutshall,* 278 N.C. 334, 180 S.E. 2d 745 (1971).

[2] Defendant argues by his second assignment that the court erred by denying his motion for acquittal on all counts, maintaining that the state failed to meet its burden of proof. It is the court's duty in ruling upon such a motion, to consider all of the evidence in the light most favorable to the state and to determine if there is sufficient evidence to submit the case to the jury. *State v. Price,* 280 N.C. 154, 184 S.E. 2d 866 (1971). The motion is properly denied if there is any substantial evidence of the offense charged. *State v. Cooper,* 275 N.C. 283, 167 S.E. 2d 266 (1969). Defendant was charged with being an accessory before and after the fact to the crime of disturbing a grave. The testimony of Sams and Aikens that defendant encouraged them to commit the crime; told them he would melt down and dispose of any gold they could thieve; advised them what implements to take to the graveyard; helped Aikens and Sams, at his own home, remove gold from teeth taken from the bodies, and denied to the sheriff knowing anything about the robbery; was clearly sufficient to allow the jury to find that defendant knew of the crime and rendered the principals assistance in escaping detection, arrest, and punishment. We note, in response to defendant's argument that he feared for his life and did not intend to give advantage to the perpetrators, that the jury was charged that if it found that defendant feared for his life if he disclosed information about the crime, and for that reason reasonably failed to divulge the information, that he should be found not guilty.

[3] Defendant next contends that the trial court erred in omitting Louis Bollo's name from a portion of its instructions to the jury. We find any such error to be nonprejudicial. Defendant was charged with being an accessory to a crime committed by three other named men. In its charge, the court named only two of the men identified in the indictments, obviously because there was no evidence linking Bollo and defendant. "If an averment in an indictment is not necessary in charging the offense, it may be disregarded." *State v. Dixon,* 8 N.C. App. 37, 39, 173 S.E. 2d 540, 541 (1970). The evidence otherwise supports the finding that defendant was an accessory to crimes committed by Aikens and

Sams, so Bollo's name may be considered surplusage and its omission from the charge harmless. *Id.*

[4] Defendant alleges that the trial court erred in its instructions to the jury explaining the elements of accessory after the fact. The portion of the charge excepted to is as follows:

> . . . and that thereafter on or about the 13th day of June, 1980, Stanley Lewis knowing Kevin Sams and Luther Aikens to have committed the crime of disturbing a grave, assisted Kevin Sams and Luther Aikens in escaping or attempting to escape detection, arrest or punishment *by accepting part of the proceeds of the crime of disturbing a grave* and *refusing to disclose his knowledge of the crime when asked to do so by law enforcement officers,* it would be your duty to return a verdict of guilty as charged as an accessory after the fact of disturbing a grave. (Emphasis ours.)

Defendant argues that accepting part of the proceeds of a crime does not make one an accessory after the fact; rather, that it constitutes the crime of receiving stolen goods. We agree. However, the court's charge goes further and states that if defendant refused to disclose his knowledge of the crime when asked to do so, it would be the jury's duty to return a verdict of guilty as charged. All the elements necessary for conviction of being an accessory after the fact of disturbing graves were presented to the jury in the instructions, and the error committed by the judge when he added the words "accepting part of the proceeds of the crime" was not prejudicial, as it could only have increased the state's evidentiary burden in the minds of the jury.

[5] Defendant also argues that the language in the charge did not describe defendant's alleged acts as set out in the indictment. The bill of indictment stated:

> This offense occurred in that said Defendant, not being present at the time of the offense but with knowledge that said felony had been committed and that said principals had committed it, rendered assistance to each of said principals in escaping arrest and punishment. *The assistance consisted of assisting in concealing and disposing of things removed from said graves and was in violation of N.C.G.S. 14-50.* (Emphasis ours.)

The indictment must charge all the essential elements of the alleged criminal offense. *State v. Morgan*, 226 N.C. 414, 38 S.E. 2d 166 (1946). The indictment in this case adequately charged the elements of the crime of accessory after the fact. See *State v. Potter*, 221 N.C. 153, 19 S.E. 2d 257 (1942). "The bill is complete without evidentiary matters descriptive of the manner and means by which the offense was committed. A verdict of guilty, or not guilty, is only as to the offense charged, not of surplus or evidential matters alleged." *State v. Muskelly*, 6 N.C. App. 174, 176-77, 169 S.E. 2d 530, 532 (1969). An averment in an indictment or warrant not necessary in charging the offense may be treated as exceeding what is requisite and should be disregarded. *Id.* We find it unnecessary to pass upon the effect of the evidential matters charged, therefore. The evidence corresponded with the allegations of the indictment which were essential and material to charge the offense. The judge in turn did an adequate job of clarifying the issues, and of eliminating extraneous matters, as was his duty. This assignment of error is overruled.

**[6]** Defendant, by his fifth and final assignment, contends that the court meted out to him an unduly harsh sentence compared to the punishment received by Aikens, Bollo and Sams.

> Trial judges have broad discretion in making a judgment as to the proper punishment for crime. Their judgment will not be disturbed unless there is a showing of abuse of discretion, procedural conduct prejudicial to the defendant, or circumstances which manifest inherent unfairness.

*State v. Wilkins*, 297 N.C. 237, 246, 254 S.E. 2d 598, 604 (1979). We have searched the record and find no reason to disturb what we consider to be the trial court's sound exercise of discretion. We find no circumstances which manifest inherent unfairness. The assignment of error is overruled.

In defendant's trial and in the judgment rendered, we find

No error.

Judges CLARK and MARTIN (Harry C.) concur.