STATE v. SISK

[123 N.C. App. 361 (1996)]

STATE OF NORTH CAROLINA v. AMY JANE SISK, DEFENDANT

No. COA95-866

(Filed 6 August 1996)

### 1. Forgery § 19 (NCI4th)— no fatal variance between indictment and proof—indictment altered but not amended

Though the indictment charging the uttering of a forged check with intent to defraud was carelessly drafted, the variance between the indictment and the proof at trial was not fatal where the caption of the indictment correctly stated defendant's name as the person charged, and the indictment incorporated that identification by reference in the body of the indictment; the body of the indictment specifically identified defendant as the named payee of the forged document before mistakenly referring to defendant by the incorrect name; the use of the incorrect bank name did not confuse the charge against defendant; and alterations allowed by the trial court to make the indictment conform to the evidence did not alter the charge substantially and thus did not constitute an impermissible amendment.

**Am Jur 2d, Forgery § 41.**

**Sufficiency of the indictment information, or other form of criminal complaint, omitting or misstating middle name or initial of person named therein. 15 ALR3d 968.**

### 2. Criminal Law § 113 (NCI4th)— failure to comply with discovery—sanctions not imposed—no abuse of discretion

The trial court did not abuse its discretion in permitting the State to elicit testimony with regard to allegedly forged checks which the State had failed to produce prior to trial pursuant to defendant's discovery request. N.C.G.S. § 15A-910.

**Am Jur 2d, Depositions and Discovery § 426.**

**Exclusion of evidence in state criminal action for failure of prosecution to comply with discovery requirements as to physical or documentary evidence or the like— modern cases. 27 ALR4th 105.**

**Exclusion of evidence in state criminal action for failure of prosecution to comply with discovery requirements as to statements made by defendants or other nonexpert witnesses—modern cases. 33 ALR4th 301.**

**3. Evidence and Witnesses § 2647 (NCI4th)— psychiatric records of witness—refusal to require disclosure**

The trial court did not err by refusing to require disclosure to defendant of the psychiatric records of a State's witness and to permit defendant to cross-examine the witness with information provided by those records where the trial court reviewed the records *in camera* and found that the information therein was only remotely material to the credibility of the witness. N.C.G.S. § 8-53.

**Am Jur 2d, Witnesses §§ 487, 488.**

**Physician-patient privilege as extending to patient's medical or hospital records. 10 ALR4th 552.**

**4. Evidence and Witnesses § 330 (NCI4th)— uttering forged checks—other checks admissible to show knowledge**

In a prosecution for uttering a forged check, other allegedly forged checks drawn on the victim's account but which were not referenced in the indictment were admissible to show knowledge by defendant. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Forgery § 48.**

**Admissibility, in forgery prosecution, of other acts of forgery. 34 ALR2d 777.**

**5. Evidence and Witnesses § 967 (NCI4th)— affidavit admitted under business records exception—harmless error**

Though the trial court erred by admitting under the business records exception to the hearsay rule the affidavit of a bank account owner that several checks were neither signed nor otherwise authorized by him, such error was not prejudicial to defendant, since defendant's defense was not that the bank account owner had in fact signed or authorized the checks, but rather that defendant believed the owner had and she cashed the checks with the good faith belief that they were loans, and the objectionable affidavit did not speak to the issue of whether defendant believed the owner had authorized the checks. N.C.G.S. § 8C-1, Rule 803(6).

**Am Jur 2d, Appellate Review §§ 713, 752, 753.**

**6. Forgery § 28 (NCI4th)— uttering forged check—sufficiency of evidence**

The evidence was sufficient for the jury in a prosecution for uttering a forged check with the intent to defraud where defend-

STATE v. SISK

[123 N.C. App. 361 (1996)]

ant's boyfriend testified that defendant signed the account owner's name on the check, and defendant testified that she cashed the check.

**Am Jur 2d, Forgery §§ 16, 44.**

7. **Criminal Law § 547 (NCI4th)— closing argument—reference to unadmitted evidence—mistrial not required**

The trial court did not err in failing to declare a mistrial in a prosecution for uttering a forged check when the prosecutor, during closing arguments, mentioned two checks that were not admitted into evidence where the record shows no substantial and irreparable prejudice to defendant's case.

**Am Jur 2d, Appellate Review §§ 752, 753.**

**Propriety and prejudicial effect of prosecutor's argument to jury indicating that he has additional evidence of defendant's guilt which he did not deem necessary to present. 90 ALR3d 646.**

Judge WYNN dissenting.

Appeal by defendant from judgment entered 24 March 1995 by Judge Judson D. DeRamus, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 16 April 1996.

*Attorney General Michael F. Easley, by Assistant Attorney General J. Philip Allen, for the State.*

*Paul M. James, III for defendant-appellant.*

JOHNSON, Judge.

In February 1994, Wachovia Bank employees noticed that an account belonging to Robert Arey had twenty-seven (27) checks totaling forty-three thousand dollars ($43,000) drawn against it over a seven week period. Since this account generally showed little activity, Wachovia began an investigation to determine whether any illegal activity was taking place.

Jeffrey Fleshman, then an investigator working for Wachovia, started the investigation by contacting Detective Tony Emerson of the Winston-Salem Police Department. Together they interviewed Mr. Arey at Baptist Hospital, where he was a patient. During the course of their interview, the investigators showed Mr. Arey several checks

drawn against his account during February of 1994. Mr. Arey told them that he had neither signed the checks drawn against his account nor given anyone permission to sign his name. Mr. Arey signed several affidavits indicating that checks drawn against his account in February of 1994 were forged. Some of the forged checks were made out to defendant Amy Jane Sisk, and others were made out to Joseph Delaney, who dated defendant during the time that the checks were forged.

The State indicted defendant on the charge of uttering a forged check with the intent to defraud. At trial, Delaney testified for the State that he and defendant decided to forge checks from Mr. Arey's account, and practiced his signature in order to perpetrate the forgeries. Further, Delaney testified that he and defendant used a typewriter at a public library to make out the checks, some to himself and some to defendant, for various amounts, and that defendant forged Mr. Arey's signature on the checks. They later cashed the checks and split the proceeds. Moreover, Delaney testified that the night before they were to be interviewed by police about the checks, he and defendant went over the story they would give—that the checks had been given to them by Larry Cook, who kept Mr. Arey's checkbook, as loans from Mr. Arey to assist in their marriage and to set up a household.

Larry Cook testified that Delaney and defendant came by one day and that he and Delaney went out to buy beer while defendant stayed upstairs in the apartment. When Cook and Delaney returned, Delaney and defendant quickly left. Upon finding several checks missing from Mr. Arey's checkbook, Cook allegedly called the police, who responded that they could not do anything because he could not identify the numbers of the missing checks. No police report corroborated Cook's testimony that he had contacted the police. Cook also testified that he never gave defendant any checks.

Defendant, however, testified that Delaney gave her the check that she was accused of forging, and indicated that it was a loan from Mr. Arey because he liked to help young couples get started and that Cook could arrange for them to borrow money from Mr. Arey. Further, defendant testified that she and Delaney visited Cook often and that Cook personally gave her the other checks drawn on Mr. Arey's account. Defendant also testified that she knew nothing of Delaney's involvement in forging checks from Mr. Arey's account until after the money was spent.

The State offered into evidence seven checks, ranging in amounts from $1500 to $2875, drawn on Mr. Arey's account—four were made out to Delaney and three to defendant, totaling $15,350. The State also offered Mr. Arey's affidavits stating that his signatures on the seven checks were forgeries.

Defendant was convicted of uttering a forged instrument. Judge Judson DeRamus, Jr. sentenced defendant to two years in prison, but suspended her sentence, and ordered probation for the period of five years. Defendant appeals.

[1] Defendant first argues that the trial court erred in denying her motion to dismiss the charge at the close of the State's evidence as there was a fatal variance between the indictment and the proof. We disagree.

Defendant contends that the State's proof was at fatal variance with the indictment in the following areas: (1) the State failed to prove that defendant was the same person named in the body of the indictment, "Janette Marsh Cook," and (2) the indictment alleged that the person defrauded or intended to be defrauded was First Union National Bank, whereas the proof offered at trial showed that it was Wachovia Bank. Defendant alleges that these variances were fatal as the State offered proof at trial which did not conform to the material allegations in the indictment.

While we recognize that the indictment was carelessly drafted, we do not believe that the variance between the indictment and the proof at trial is fatal. In fact, the trial court allowed the indictment to be amended to conform to the evidence presented at trial. The caption of the indictment correctly stated defendant's name as the person charged, and the indictment incorporated that identification by reference in the body of the indictment. Moreover, the body of the indictment specifically identified defendant as the named payee of the forged document before mistakenly referring to defendant as Janette Marsh Cook. See State v. Johnson, 77 N.C. App. 583, 335 S.E.2d 770 (1985) (holding that naming defendant in caption of indictment, and then referencing caption in body of indictment, is sufficient identification of defendant).

Furthermore, defendant failed to show that the use of the name Janette Marsh Cook prejudiced her during the trial or during her trial preparation. The record shows that defendant was represented by

counsel shortly after the arrest warrant was issued, and that her counsel had at least eight months to prepare for trial. Thus, defendant was amply aware that the indictment charged her, and not Janette Marsh Cook, with the crime stated.

Additionally, we do not find the use of the incorrect bank name to be a fatal error. In *State v. Cameron*, the evidence presented at trial tended to show that the crime alleged in the indictment occurred a week prior to the date specified in the indictment. 83 N.C. App. 69, 349 S.E.2d 327 (1986). This Court allowed the State to alter the indictment to conform to the evidence, stating: "What is important is the defendant's understanding of the charge against which he needed to defend." *Id.* at 73, 349 S.E.2d at 330. In the case *sub judice*, the name of the bank does not confuse the charge against defendant.

Moreover, the name of the bank does not speak to the essential elements of the offense charged, and thus it "should be disregarded." *State v. Lewis*, 58 N.C. App. 348, 354, 293 S.E.2d 638, 642 (1982), *cert. denied*, 311 N.C. 766, 321 S.E.2d 152 (1984). A mistake in such information which is mere surplusage may be ignored if its inclusion has not prejudiced defendant. *See State v. Cole*, 19 N.C. App. 611, 199 S.E.2d 748 (1973). Defendant did not rely on the identity of the bank in framing her defense. Defendant's argument at trial was that she believed the checks were legally signed. The bank at which she cashed the check is irrelevant to this defense. Thus, the indictment did not contain a fatal variance, nor did the trial court improperly allow the indictment to be altered. *See Cameron*, 83 N.C. App. at 73, 349 S.E.2d at 330 (holding that incorrect date of alleged offense in indictment was not fatal error because defendant did not rely on a "reverse alibi" defense).

This Court recognizes that an indictment may not be "amended" pursuant to North Carolina General Statutes § 15A-923(e); however, this Court also recognizes that "[t]his statute . . . has been construed to mean only that an indictment may not be amended in a way which 'would substantially alter the charge set forth in the indictment.'" *State v. Brinson*, 337 N.C. 764, 767, 448 S.E.2d 822, 824 (1994) (quoting *State v. Carrington*, 35 N.C. App. 53, 58, 240 S.E.2d 475, 478, *disc. rev. denied and dismissal allowed*, 294 N.C. 737, 244 S.E.2d 155 (1978)). We hold that the alterations allowed by the trial court did not alter the charge substantially for the purposes of this definition, and thus, the alterations do not constitute an amendment. These arguments are, consequently, without merit.

**[2]** Defendant next argues that the trial court erred in allowing the State to elicit testimony with regard to exhibits 19-21 (the checks) because the State did not produce the exhibits prior to trial pursuant to defendant's discovery request. Noncompliance with discovery requests in criminal cases are governed by North Carolina General Statutes section 15A-910. This statute authorizes various sanctions for noncompliance; however, the decision of whether to impose sanctions is within the sound discretion of the trial court and is not reviewable on appeal absent an abuse of discretion. *See State v. Herring*, 322 N.C. 733, 370 S.E.2d 363 (1988); *State v. Gladden*, 315 N.C. 398, 340 S.E.2d 673, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986). Upon a careful review of the record, we find no abuse of discretion; therefore, this argument fails.

Defendant also argues that the trial court erred in refusing to allow defense counsel to adequately cross-examine State witness Joe Delaney with regard to his violations of probation. Defendant contends that asking the witness about possible probation violations could have shown bias by the witness. However, it is well-established that the scope of cross-examination is within the trial court's sound discretion. *State v. Wrenn*, 316 N.C. 141, 340 S.E.2d 443 (1986). Furthermore, defendant has failed to show that she was prejudiced by the trial court's ruling. *See State v. Howie*, 310 N.C. 613, 313 S.E.2d 554 (1984). As the record reveals that defense counsel questioned the witness exhaustively about his criminal record and prior probation violations, this argument is without merit.

**[3]** Defendant next argues that the trial court erred in refusing to allow defense counsel to review witness Delaney's psychiatric records and to cross-examine the witness with the information provided from those records. Confidential medical records of witnesses may be disclosed if the trial court makes a determination that disclosure is necessary for a proper administration of justice. N.C. Gen. Stat. § 8-53 (1986). However, the trial court is granted broad discretion in determining what is necessary for proper administration of justice. *State v. Efird*, 309 N.C. 802, 309 S.E.2d 228 (1983). In this action, the trial court reviewed the records *in camera* and found "nothing of anything but remote materiality to any credibility—possible credibility issues of Mr. Delaney. Just some general things about stress—financial stress and anger, such as that but nothing in any detail to indicate any lack of credibility or credibility." Thus, there is nothing to show that the trial court abused its discretion. As such, this argument is without merit.

**[4]** Defendant also argues that the trial court erred in introducing as evidence checks, pursuant to Rule 404(b), other than the check referenced in the indictment. We disagree. Rule 404(b) of the North Carolina Rules of Evidence allows admission of evidence to show knowledge. Further, it is within the trial court's discretion whether the probative value of admitting the other checks outweighed any danger of unfair prejudice. *See State v. Mason*, 315 N.C. 724, 340 S.E.2d 430 (1986). As no abuse of discretion has been shown, this argument fails.

**[5]** Defendant next argues that the trial court erred by admitting the affidavits of Mr. Arey under the business record exception to the hearsay rule because the affidavits were part of the records of the investigators, and such error was prejudicial to defendant. However, after reviewing the evidence, we find no prejudicial error, and affirm the trial court's judgment.

Hearsay is defined as a statement "offer[ed] into evidence[,] . . . [whether] oral or written, made by a person other than the witness for the purpose of establishing the truth of the matter so stated." *State v. Wood*, 306 N.C. 510, 514, 294 S.E.2d 310, 312 (1982); N.C. Gen. Stat. § 8C-1, Rule 801 (1992). Hearsay is generally inadmissible, unless an exception to the hearsay rule is applicable. N.C. Gen. Stat. § 8C-1, Rule 802 (1992); *see State v. Rogers*, 109 N.C. App. 491, 428 S.E.2d 220, *cert. denied*, 334 N.C. 625, 435 S.E.2d 348 (1993), *cert. denied*, —— U.S. ——, 128 L. Ed. 2d 54 (1994) (holding that in order to admit hearsay evidence, the State must show that the introduction of the evidence is necessary, that the statement is sufficiently reliable and trustworthy, and that the statement fits within a firmly rooted exception to the hearsay rule).

North Carolina General Statutes section 8C-1, Rule 803(6), commonly known as the business records exception, states that the following is not excluded by the hearsay rule:

(6) Records of Regularly Conducted Activity.—A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances

of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

N.C. Gen. Stat. § 8C-1, Rule 803(6) (1992). As a result of this exception, business records are admissible if "made in the regular course of business, at or near the time of the transaction involved, and . . . authenticated by a witness who is familiar with them and the system under which they were made . . . ." *State v. Galloway*, 304 N.C. 485, 492, 284 S.E.2d 509, 514 (1981).

Statements made by a person other than the person(s) compiling the business record which are recorded within the record are double hearsay, or compound hearsay, and may only be admitted if an exception to the hearsay rule is found for that statement. *Fisher v. Thompson*, 50 N.C. App. 724, 727-28, 275 S.E.2d 507, 511 (1981).

In the instant case, the trial court admitted, over defendant's objection, several affidavits from Mr. Arey indicating that certain of the checks which cleared his account during the time in question, February and March of 1994, were neither signed nor otherwise authorized by him. With regard to the check defendant was convicted of forging, the affidavit was admitted as substantive evidence. With regard to the other checks, the affidavits were admitted under Rule 404(b) as evidence of a common plan or scheme.

Assuming *arguendo*, that the several affidavits, taken together, were properly admitted as business records because they were recorded by Mr. Fleshman and Mr. Emerson during the course of business, there still must be a separate hearsay exception for the statements by Mr. Arey, which comprised much of the affidavits, as these statements are double hearsay. *Fisher*, 50 N.C. App. at 727-28, 275 S.E.2d at 511. The State has not presented such an exception, nor do we believe that an exception exists under these facts which would allow the statements by Mr. Arey to be admitted as substantive evidence. Accordingly, we find error in the admission of the affidavit of Mr. Arey as substantive evidence of the alleged forgery of a check by defendant. Having determined that the admission of Mr. Arey's affidavit as substantive evidence was erroneous, we must next determine whether the error was prejudicial, thus requiring a new trial.

It is well-settled that erroneous admission of hearsay evidence does not always require a new trial. *State v. Ramey*, 318 N.C. 457, 470,

349 S.E.2d 566, 574 (1986). North Carolina General Statutes section 15A-1443 states "[a] violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. . . ." N.C. Gen. Stat. § 15A-1443 (1988). The substantive admission of hearsay evidence not falling within a statutory exception to the hearsay rule is prohibited by the Confrontation Clause of the Sixth Amendment to the United States Constitution. *See Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597 (1980); *Rogers*, 109 N.C. App. 491, 428 S.E.2d 220; *In re Lucas*, 94 N.C. App. 442, 380 S.E.2d 563 (1989). Thus, the burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless. N.C.G.S. § 15A-1443. In order for this Court to find that the error affecting defendant's constitutional rights was harmless beyond a reasonable doubt, we must determine that the error had no bearing on the jury deliberations. *State v. Reid*, 334 N.C. 551, 558, 434 S.E.2d 193, 198 (1993); *State v. Thompson*, 118 N.C. App. 33, 42, 454 S.E.2d 271, 277, *disc. review denied*, 340 N.C. 262, 456 S.E.2d 837 (1995).

The State points out in its brief that defendant's defense was not that Mr. Arey had in fact signed or authorized the checks, but rather that defendant believed Mr. Arey had, and that she cashed the checks with the good faith belief that they were loans. We find that the admission of Mr. Arey's affidavit was harmless because it did not speak to the issue of whether defendant believed Mr. Arey had authorized the checks.

In addition, defendant's boyfriend, Joe Delaney, who pled guilty to four counts of uttering a forged check, and Larry Cook, who pled guilty to obtaining money from Mr. Arey by false pretenses, both testified against defendant. Their testimony, if believed, was ample evidence from which a jury could have found defendant guilty of the charged offense. Accordingly, there was no prejudicial error.

[6] Defendant next argues that the trial court erred in denying its motion to dismiss at the close of all of the evidence as there was insufficient evidence. We disagree.

Substantial evidence that a crime has been committed and that defendant was the perpetrator of that crime must exist to withstand a motion to dismiss. *State v. Rannels*, 333 N.C. 644, 430 S.E.2d 254 (1993). The evidence viewed in the light most favorable to the State reveals that witness Joe Delaney testified that defendant signed Mr. Arey's name on the check, and defendant testified that she cashed the

check. This evidence, even without the Rule 404(b) evidence, was substantial evidence to show that defendant (1) offered a forged check to another, (2) with knowledge that the check was false, and (3) with the intent to defraud. *See* N.C. Gen. Stat. § 14-120 (1993). Thus, defendant's argument is without merit.

**[7]** Defendant next argues that the trial court erred in failing to declare a mistrial when the prosecutor, during closing arguments, mentioned two checks that were not admitted into evidence during the trial. A review of the record reveals that no "substantial and irreparable prejudice" was done to defendant's case. *See* N.C. Gen. Stat. § 15A-1061 (1988).

> A motion for mistrial should be granted when an occurrence during the trial results "in substantial and irreparable prejudice to the defendant's case." The decision as to whether substantial and irreparable prejudice has occurred lies within the court's discretion and, absent a showing of abuse of that discretion, the decision of the trial court will not be disturbed on appeal.

*State v. Mills*, 39 N.C. App. 47, 50, 249 S.E.2d 446, 448 (1978), *disc. review denied*, 296 N.C. 588, 254 S.E.2d 33 (1979) (citation omitted). No abuse of discretion was shown, thus, this argument is also without merit.

Defendant's final argument is that the trial court abused its discretion by allowing the Wachovia investigator to describe the facts that led to his investigation. After a careful review of this matter, we find no abuse of discretion.

For the reasons stated herein, we find that defendant received a fair trial, free from prejudicial error.

No error.

Judge WALKER concurs.

Judge WYNN dissents.

Judge WYNN dissenting.

I disagree with the conclusion of the majority that the admission of the affidavit of Mr. Arey was harmless. Accordingly, I dissent.

**STATE v. SISK**

[123 N.C. App. 361 (1996)]

As stated by the majority, "[a] violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt." N.C. Gen. Stat. § 15A-1443(b) (1991). In order for this Court to find that the error affecting the defendant's constitutional rights was harmless, we must determine that the error had no bearing on the jury deliberations. *State v. Reid*, 334 N.C. 551, 558, 434 S.E.2d 193, 198 (1993); *State v. Thompson*, 118 N.C. App. 33, 42, 454 S.E.2d 271, 277.

I don't believe the introduction of Mr. Arey's affidavits had "no bearing on the jury deliberations." Ms. Sisk was charged with the crime of uttering a forged check with the intent to defraud. One essential element of this crime is that the instrument is in fact forged. Mr. Arey stated in his affidavit that he had not signed the check which Ms. Sisk was accused of forging, meaning that it was forged by someone.

The majority concludes that since Ms. Sisk's defense was not that Mr. Arey had authorized the checks, but rather that she believed he had, Mr. Arey's affidavit was not necessary to prove her guilt. Whether erroneously admitted evidence is necessary to prove guilt is not the test for overcoming an error affecting a constitutional right. Rather, we must determine that the evidence had no bearing on the jury's deliberation. *Reid*, 334 N.C. 551, 434 S.E.2d 193.

In addition, the majority states that both Joe Delaney and Larry Cook testified against Ms. Sisk. However, a review of the transcript reveals that Mr. Cook's testimony was of a limited nature, and conflicted in important ways with the testimony of Mr. Delaney. This fact further demonstrates why we can not determine that the introduction of Mr. Arey's affidavit had no bearing on the jury's deliberations.

Since I conclude that the State failed to meet its burden of showing that the introduction of Mr. Arey's affidavit in violation of Ms. Sisk's constitutional rights had no bearing on the jury's deliberations, I must respectfully dissent.