STATE OF NORTH CAROLINA v. KEITH WADE KIDWELL

No. COA10-1407

(Filed 17 January 2012)

**1. Discovery—timeliness—motion for continuance denied— waiver of constitutional issues—speculation**

The trial court did not abuse its discretion in a larceny and first-degree murder case by failing to grant defendant's motion for a continuance based on the State's alleged repeated failure to provide material discovery in a timely manner. Defendant failed to raise his constitutional issues at trial, and thus, they were waived. Further, defendant raised no more than mere speculation that something helpful to him may have turned up.

**2. Homicide—first-degree murder—motion to dismiss— sufficiency of evidence—robbery**

The trial court did not err by failing to dismiss the charge of first-degree murder. The State presented substantial evidence that defendant killed the victim during the commission of a robbery at a convenience store.

Appeal by defendant from judgment entered 3 November 2009 by Judge Orlando F. Hudson in Durham County Superior Court. Heard in the Court of Appeals 17 August 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Amy Kunstling Irene, for the State.*

*David Neal for defendant-appellant.*

BRYANT, Judge.

Because defendant offers only the intangible hope that something helpful to his defense may have possibly turned up from the untimely receipt of discovery, the trial court did not err in denying his motions for a continuance. Where there was substantial evidence that defendant killed the victim in order to commit a robbery, the trial court did not err in denying defendant's motion to dismiss the charge of first-degree murder.

On 10 February 2005, at 3:00 a.m., Robert Holmes, an employee of Maola Milk and Ice Cream Company, was making a delivery to the

Kangaroo convenience store located on North Roxboro Street in Durham County. As he entered the lot, Holmes observed a Ford F-150 truck backing out of a space near the front door. Holmes recognized the truck as belonging to Crayton Nelms, a store clerk who worked the third shift. However, as the vehicles passed, Holmes saw a black male whom he did not recognize driving Nelms' truck. In the convenience store, searching for the clerk to sign off on the delivery, Holmes discovered Nelms' deceased body.

Sergeant Brent Hallans, supervisor of the Durham Police Department, Homicide Division, reported to and assumed control of the crime scene that morning. Nelms' head exhibited severe bruising and scrapes, and his left ear was almost completely detached. A medical examiner later testified that Nelms suffered a "compressive injury" to the skull caused by pressure possibly created between hands and/or feet and the floor which resulted in shear hemorrhages within the brain. The cause of death was blunt force trauma to the head.

Nelms' pants pockets had been turned inside out, and scattered on the floor of the convenience store were empty canisters which normally contained money used to make change for cash transactions. The store manager estimated that approximately $900.00 to $1,000.00 was missing.[1]

Sgt. Hallans issued a notice for law enforcement to be on the lookout for Nelms' burgundy 2004 Ford F-150 pick-up truck. Approximately twenty-four hours later, at 3:00 a.m. the next morning, 11 February 2005, defendant Keith Kidwell was stopped by a highway patrol trooper for speeding on west-bound Interstate 40 in Oklahoma. Defendant, a large black male, was driving Nelms' Ford F-150 truck. The trooper took defendant into custody for questioning about the homicide in North Carolina. After being read his Miranda rights, defendant stated "murder, I'm going down for murder."

Patting defendant down, the trooper found "a wad of currency" and change totaling $627.69. After inventorying the vehicle, troopers also seized a pair of Nike tennis shoes. Blood on a ten dollar bill found in defendant's possession contained Nelms' DNA, and the left Nike tennis shoe had DNA from both defendant and Nelms.

From the Kangaroo convenience store in Durham, law enforcement preserved bloodstained cardboard found under Nelms body and

---

1. Defendant worked at the Kangaroo convenience store located on North Roxboro Road as a store clerk from 21 October 2004 through 27 October 2004.

a stained fleece vest he was wearing. The outsole design of shoe prints left on the blood stained cardboard matched the outsole design of the Nike tennis shoes found in the Ford F-150 truck when defendant was arrested. A shoe print left on the victim's fleece vest matched the size and outsole design of the left Nike tennis shoe. And, latent prints recovered from the convenience store men's restroom matched defendant's finger prints.

On 21 March 2005, defendant was indicted for larceny of a motor vehicle and subsequently indicted for obtaining property by false pretenses, and murder. Soon after, defendant filed a motion for voluntary discovery requesting that the prosecutor's office make available "the complete files of all law enforcement and prosecutorial agencies involved in the investigation of the crimes committed or the prosecution of the defendant." A voluminous amount of discovery was provided to defendant pursuant to his request. Otherwise, over four years later, on 17 September 2009, five days before defendant's jury trial commenced in Durham County Superior Court, the prosecution released to defendant twenty-two pages of Sgt. Hallan's notes. During the trial, defendant was provided with a photo log of the crime scene—the convenience store—and was also made aware of the existence of the following: an unanalyzed latent shoe print; a fingerprint near blood spatter that did not match defendant; and, eighteen latent print cards and a latent print comparison log indicating prints made by persons other than defendant. Defendant also learned that law enforcement did not lift a latent print from the shoes of Robert Holmes, the delivery man who discovered the body. Defendant's motions to continue due to untimely receipt of discovery were denied.

On 3 November 2009, defendant was found guilty of larceny and first-degree murder on the basis of felony murder. The trial court entered a consolidated judgment in accordance with the jury verdict and sentenced defendant to life imprisonment without parole. Defendant appeals.

On appeal, defendant raises the following arguments: the trial court erred in failing to (I) grant a continuance and compel additional testing on items recovered; and (II) dismiss the charge of first-degree murder.

*I*

[1] Defendant argues that the trial court erred in failing to grant his motion for a continuance. Defendant contends that the State repeat-

edly failed to provide material discovery in a timely manner and that the trial court's refusal to grant a continuance violated defendant's right to a fair trial. We disagree.

Under North Carolina General Statutes, section 15A-903,

> [u]pon motion of the defendant, the court must order the State to:
>
> > (1) Make available to the defendant the complete files of all law enforcement and prosecutorial agencies involved in the investigation of the crimes committed or the prosecution of the defendant. The term "file" includes . . . investigating officers' notes, results of tests and examinations, or any other matter or evidence obtained during the investigation of the offenses alleged to have been committed by the defendant.

N.C. Gen. Stat. § 15A-903(a)(1) (2009). "Noncompliance with discovery requests in criminal cases [is] governed by North Carolina General Statutes section 15A-910." *State v. Sisk*, 123 N.C. App. 361, 367, 473 S.E.2d 348, 352 (1996). A trial court may grant a continuance or impose other sanctions for failure to comply with discovery orders. N.C.G.S. § 15A-910(a)(2) (2009), "[H]owever, the decision of whether to impose sanctions is within the sound discretion of the trial court and is not reviewable on appeal absent an abuse of discretion . . . ." *Sisk*, 123 N.C. App. at 367, 473 S.E.2d at 352 (citations omitted). "Generally, the denial of a motion to continue . . . is sufficient grounds for the granting of a new trial only when the defendant is able to show that the denial was erroneous and that he suffered prejudice as a result of the error." *State v. Rogers*, 352 N.C. 119, 124, 529 S.E.2d 671, 675 (2000) (citation omitted).

> [A] postponement is proper if there is a belief that *material* evidence will come to light and such belief is reasonably grounded on known facts. But a mere intangible hope that something helpful to a litigant may possibly turn up affords no sufficient basis for delaying a trial to a later term.

*State v. Tolley*, 290 N.C. 349, 357, 226 S.E.2d 353, 362 (1976) (citations omitted).

Following defendant's 7 April 2005 voluntary discovery request, the prosecution provided substantial discovery to defendant over the next four years, including: DNA evidence, Nelms' autopsy report, video from the SBI investigation, evidence inventory sheets, scientific data, and SBI reports. Thereafter, in a hearing held 3 August 2009, the

STATE v. KIDWELL

[218 N.C. App. 134 (2012)]

trial court ordered that discovery be completed at least one month prior to trial.

Trial was scheduled to begin on 22 September 2009. On 17 September 2009, defendant was given additional discovery in the form of 22 pages of notes handwritten by Sgt. Hallan. On 22 September, defendant made a motion for a continuance asserting that the prosecution failed to provide access to the complete files of the District Attorney and law enforcement and citing a lack of notes from the head of the forensic investigation team. Defendant noted that the prosecution had recently provided the notes of Sgt. Hallan, who, at the time the homicide was reported, was Homicide Division supervisor and assumed control of the crime scene. Sgt. Hallan's notes record actions taken by law enforcement at various points during the investigation starting from the time he arrived at the crime scene on the morning of 10 February 2005 until 24 March 2005 when an arrest warrant was issued charging defendant with murder. In particular, defendant cites the following notations from Sgt. Hallan's notes:

(1) a homicide detective contacted a store clerk who discussed "B/M . . . runs scams[,] visits weekly[,] [store clerk] said saw him Sun[.,] gets mad[,] buy beers sometime[, and] Black & Mild[,] store 1A contacted for list";

(2) notes from contact with defendant's mother -- "on site [at her residence] . . . consent given, briefed her on sit rep[,] room searched—rec'd Nike shoe box (property)[,] trash & woods[.] Stated: her son last seen on Wed[.] nite [sic] about 10:00 pm. when she woke up Thur[.] morn, her son & his bags were gone";

(3) notes from a 28 February 2005 discussion with another detective "date for evidence to be taken to SBI for DNA . . . [detective] advises during morn meeting he will not charge till DNA is back"; and

(4) On the date 28 February under the heading "Task," Sgt. Hallan writes "1—interview store clerks on last cleaning of store—particularly @ sink[,] 2—knife found in poss of suspect—can it be ID by victim family[,] 3—interview sus mother about son and the money he had or did not have[, and] 4—print check book found on highway[.]"

Defendant contends that Sgt. Hallan's notes indicate tasks defendant could not otherwise have known had taken place, and, because

the notes were provided days before trial was to commence, he could not adequately investigate.

Apart from defendant's pretrial argument regarding Sgt. Hallan's notes, defendant asserts that the day before trial, he was provided with sketches of the convenience store made by a law enforcement officer, and, during the trial, he was provided with photo logs and photos taken during law enforcement's investigation in the convenience store.[2]

Defendant argues that the prosecution's failure to provide discovery in a timely manner impacted his ability to thoroughly examine law enforcement's investigation. Defendant contends Sgt. Hallan's notes and crime scene diagrams indicate that law enforcement failed to analyze all latent shoe prints and test blood collected away from the main areas where Nelms' blood was found. Defendant contends that this was significant in that it would either further inculpate defendant or lead to the identity of another suspect. Defendant argues on appeal that the cumulative effect of these discovery violations resulted in a violation of his constitutional right to due process. However, defendant did not raise this argument before the trial court. *See State v. Maness*, 363 N.C. 261, 279, 677 S.E.2d 796, 808 (2009) ("a constitutional issue not raised at trial will generally not be considered for the first time on appeal." (citation omitted)). Therefore, we do not further address defendant's constitutional argument.[3]

---

2. Though included in defendant's question presented, defendant does not further reference the forensic file, non-matching fingerprints, and crime scene photos in his argument.

3. While we do not directly address defendant's constitutional argument, we note the acknowledgments of our Supreme Court in addressing allegations of discovery violations with regard to due process.

> The United States Supreme Court has noted the difficulties involved in requiring a state to take affirmative steps to preserve evidence on behalf of criminal defendants and has stated that "police do not have a constitutional duty to perform any particular tests" on crime scene evidence or to "use a particular investigatory tool," [*Arizona v. Youngblood*, 488 U.S. 51, 58-59 (1988)] (stating also that the Due Process Clause does not "impose[] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution").

*State v. Taylor*, 362 N.C. 514, 525-26, 669 S.E.2d 239, 253 (2008) (citation and quotations omitted).
" '[T]he purpose of discovery under our statutes is to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate.' " *State v. Cook*, 362 N.C. 285, 291, 661 S.E.2d 874, 878 (2008) (quoting *State v. Murillo*, 349 N.C. 573, 585, 509 S.E.2d 752, 759 (1998)).

STATE v. KIDWELL

[218 N.C. App. 134 (2012)]

Because the trial court denied defendant's motion for a continuance and because we dismiss defendant's constitutional argument, we review the trial court's actions for abuse of discretion.

Here, the trial court ordered the State to continue analyzing certain discovery evidence, such as the latent shoe print, and to report to the court and defendant the results of any analysis. The trial court noted that the testimony of any witnesses involved in the analysis of the evidence in question would be postponed pending completion of the analysis.

In his brief, defendant set forth many arguments suggesting that, because of the late discovery provided by the State, defendant might have been able to pursue certain leads that might in turn have revealed additional evidence that might have been helpful to the defense. Such speculation, no matter how forcefully argued is not sufficient to show material prejudice. Because defendant raises no more than the mere hope that something helpful to him may have turned up, defendant is unable to show that the trial court abused its discretion in denying defendant's motion. *See Tolley*, 290 N.C. at 357, 226 S.E.2d at 362. Defendant's argument is overruled.

*II*

**[2]** Defendant argues that the trial court erred in denying his motion to dismiss the first-degree murder charge. Defendant contends that his motion to dismiss should have been granted because the State failed to present substantial evidence that defendant was the only person who killed the victim. We disagree.

> The standard for ruling on a motion to dismiss is whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of

---

Whether a failure to make evidence available to a defendant violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution depends in part on the nature of the evidence at issue. When the evidence is exculpatory, that is, "either material to the guilt of the defendant or relevant to the punishment to be imposed," the state's failure to disclose the evidence violates the defendant's constitutional rights irrespective of the good or bad faith of the state. Nonetheless, when the evidence is only "'potentially useful'" or when "'no more can be said [of the evidence] than that it could have been subjected to tests, the results of which might have exonerated the defendant,'" the state's failure to preserve the evidence does not violate the defendant's constitutional rights unless the defendant shows bad faith on the part of the state.

*Taylor*, 362 N.C. at 525, 669 S.E.2d at 252-53 (citations omitted).

the offense. Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. In ruling on a motion to dismiss, the trial court must consider all of the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal.

*State v. Webb*, 192 N.C. App. 719, 721, 666 S.E.2d 212, 214 (2008) (citation omitted). "When as here the motion to dismiss puts into question the sufficiency of circumstantial evidence, the court must decide whether a reasonable inference of the defendant's guilt may be drawn from the circumstances shown." *State v. Alford*, 329 N.C. 755, 760-61, 407 S.E.2d 519, 523 (1991) (citation omitted).

Defendant was indicted and tried on the charge of murder. The jury found defendant guilty of first-degree murder on the basis of the felony murder rule. Under North Carolina General Statutes, section 14-17, "[a] murder which shall be . . . committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed . . . shall be deemed to be murder in the first degree . . . ." N.C. Gen. Stat. § 14-17 (2009). "Common law robbery is defined as the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Shaw*, 164 N.C. App. 723, 728, 596 S.E.2d 884, 888 (2004) (citation omitted).

Here, the State presented evidence that defendant worked at the Kangaroo convenience store located on North Roxboro Road in Durham as a clerk from 21 October 2004 through 27 November 2004. On 10 February 2005 at 3:00 a.m., the body of store clerk Crayton Nelms was found at the Kangaroo convenience store located on North Roxboro Road in Durham. The medical examiner testified that the cause of death was blunt force trauma to the head: specifically compression of the skull possibly caused by pressure created between hands and/or feet and the floor.

Nelms' pockets were turned inside out. Cylinders which contained individual denominations of money for the clerks to make change for customers lay on the floor, empty. The store manager testified that between $900.00 and $1,000.00 was missing from the store and that it may have taken as long as an hour for that much money to be removed. The delivery man informed law enforcement that when he

pulled into the parking lot, he observed Nelms' burgundy 2004 Ford F-150 pick-up truck being driven away by a black male whom he did not recognize.

At 3:00 a.m. the next morning, 11 February 2005, Oklahoma Highway Patrol trooper stopped defendant, a large, black male, while he was driving Nelms' burgundy 2004 Ford F-150 pick-up truck. Defendant had $627.69 in cash on his person. Shoe prints found both on the convenience store floor under the victim, as well as, on the victim's clothes were consistent with the soles of tennis shoes found in defendant's possession at the time he was arrested approximately twenty-four hours later. Fingerprints matching defendant's were found in the convenience store bathroom. Furthermore, Nelms' DNA was found on the cash and shoes defendant had in his possession at the time he was arrested.

The prosecution presented substantial evidence that defendant killed Nelms during the commission of a robbery at the Kangaroo convenience store. Accordingly, defendant's argument is overruled.

No error.

Judges GEER and BEASLEY concur.